The Honorable S. Kate Vaughan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOAH SAEEDY, VISHAL SHAH, TINA WILKINSON, and M.C., a minor, by and through his natural parent and legal guardian, Moses Chatmann III, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>Defendant. | No. 2:24-cv-00219-SKV<br><br>**MICROSOFT'S MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>**NOTE ON MOTION CALENDAR: March 22, 2024**<br><br>**ORAL ARGUMENT REQUESTED** |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Plaintiffs Created Microsoft Accounts That They Used to Browse on Edge. .......... 2

B. Plaintiffs Agreed to Individual Arbitration in Creating and Continuing to Use Their Microsoft Accounts to Browse on Edge and Search on Bing. .......... 3

1. Plaintiffs' Creation of Microsoft Accounts and MSA Acceptances. .......... 3

2. Plaintiffs' Agreements to Binding Individual Arbitrations. .......... 5

3. Plaintiffs' Continued Assent to Individual Arbitrations. .......... 6

4. Plaintiffs' Agreements to the Microsoft Privacy Statement. .......... 7

C. Plaintiffs Ignored Their Agreements to Individual Arbitrations. .......... 8

III. ARGUMENT .......... 9

A. The FAA Requires Courts to "Rigorously" Enforce Agreements to Arbitrate. .......... 9

B. The Court Should Compel Individual Arbitrations of Plaintiffs' Claims. .......... 9

1. Plaintiffs Entered Valid Arbitration Agreements with Microsoft. .......... 9

2. The Arbitration Agreement Covers Plaintiffs' Claims. .......... 13

C. The Court Should Stay This Action Pending Individual Arbitrations. .......... 15

IV. CONCLUSION .......... 15




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
2014 WL 12610227 (N.D. Cal. 2014) ....15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ....13, 15

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....9

*Chen v. Sierra Trading Post, Inc.*,
2019 WL 3564659 (W.D. Wash. 2019) ....11

*Day v. Microsoft Corp.*,
2014 WL 243159 (W.D. Wash. 2014) ....2, 12

*Diaz v. Intuit, Inc.*,
2017 WL 4355075 (N.D. Cal. 2017) ....15

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ....9

*Gurule v. Airbnb, Inc.*,
2023 WL 8438545 (C.D. Cal. 2023) ....13

*Harbers v. Eddie Bauer, LLC*,
2019 WL 6130822 (W.D. Wash. 2019) ....11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ....9

*In re Wyze Data Incident Litig.*,
2020 WL 6202724 (W.D. Wash. 2020) ....13

*J.A. v. Microsoft Corp.*,
2021 WL 1723454 (W.D. Wash. 2021) ....2, 12

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....10

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ....13, 14



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ....................................................................................13

*Maher v. Microsoft Corp.*,
2018 WL 1535043 (N.D. Ill. 2018) ...............................................................................2, 12

*Mendoza v. Microsoft Inc.*,
2014 WL 4540225 (W.D. Wash. 2014) ......................................................................2, 12, 14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)..........................................................................................13

*Munning v. Nordstrom, Inc.*,
2020 WL 1528477 (W.D. Wash. 2020) .............................................................................13

*Nevarez v. Forty Niners Football Co., LLC*,
2017 WL 3492110 (N.D. Cal. 2017) ................................................................................13

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..................................................................................9, 11, 12

*Patrick v. Running Warehouse, LLC*,
--- F.4th ----, 2024 WL 542831 (9th Cir. 2024)..................................................................12

*Perez v. Discover Bank*,
74 F.4th 1003 (9th Cir. 2023) .......................................................................................10

*Romanov v. Microsoft Corp.*,
2021 WL 3486938 (D.N.J. 2021) .................................................................................2, 12

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. 2023) ...............................................................................13

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. 2023).....................................................................1, 3, 8, 14

*Schmidt v. Samsung Elecs. Am., Inc.*,
2017 WL 2289035 (W.D. Wash. 2017).............................................................................10

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)..........................................................................................10

*Stock v. Wells Fargo*,
2023 WL 5505839 (C.D. Cal. 2023)................................................................................10

*Tater v. OANDA Corp.*,
2019 WL 4597517 (W.D. Wash. 2019).............................................................................13



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Taylor v. Eclipse Senior Living, Inc.*,
2022 WL 1004560 (S.D. Cal. 2022) ........ 10

*Walsh v. Microsoft Corp.*,
2014 WL 4168479 (W.D. Wash. 2014) ........ 2, 12, 15

*Walters v. Chase Manhattan Bank*,
2008 WL 3200739 (E.D. Wash. 2008) ........ 13

**State Cases**

*Donovan v. RRL Corp.*,
26 Cal. 4th 261 (2001), *as modified* (Sept. 12, 2001) ........ 10

*Keystone Land & Dev. Co. v. Xerox Corp.*,
152 Wn.2d 171 (2004) ........ 10

**Federal Statutes**

9 U.S.C.
§ 2 ........ 9
§ 3 ........ 15



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Plaintiffs allege that Microsoft unlawfully collected their private data when they browsed the internet using Microsoft's Edge web browser and Bing search engine. This Court previously dismissed the same thirteen claims asserted by Plaintiffs because Plaintiffs failed to allege they provided "any personal or sensitive information to Microsoft that implicates a protectable privacy interest." *Saeedy v. Microsoft Corp*., 2023 WL 8828852, *5 (W.D. Wash. 2023). The Court's conclusion rested on the fact that: "Plaintiffs allege that the data collected can be associated with their names but they allege that this association can be made *when the user is logged into a Microsoft account*. *None of the Plaintiffs allege that they logged into a Microsoft account* either before or during their browsing activities." *Id.* n.6 (emphasis added).[1] In the amended complaint, Plaintiffs now allege that Microsoft unlawfully collected private data linked to their Microsoft accounts, which they claim they were "almost always" or "frequently" logged into when they browsed the internet and ran searches on Edge and Bing. Compl. ¶¶ 9–24. These new allegations, however, merely confirm that Plaintiffs are bound to individually arbitrate their claims based on terms they necessarily accepted when they created their Microsoft accounts.

When Plaintiffs created their Microsoft accounts, each agreed to the Microsoft Services Agreement ("**MSA**") through a straightforward process that required each Plaintiff to accept its terms before proceeding. Plaintiffs could not create a Microsoft account—much less log into one to browse on Edge or search on Bing—without first accepting the MSA. The MSA includes a binding arbitration agreement and class action waiver broadly covering disputes concerning, among other things, (a) use of a "Microsoft account"; (b) use of "Services," which expressly include Bing; and (c) Microsoft's privacy policies and disclosures, including the Privacy

---

[1] The Court thus dismissed the complaint but granted Plaintiffs the opportunity to seek leave to file an amended complaint remedying the deficiencies. *Id.* at *7. In lieu of seeking leave to amend, however, Plaintiffs filed an amended complaint as a new action in King County Superior Court, thereby initiating the above-captioned lawsuit. Because the new complaint now includes amended allegations addressing the Court's concerns, Microsoft timely removed the state court action to this Court and filed a Statement of Related Case concerning the previous action before Judge Rothstein. Dkt. 1; Dkt. 3.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Statement (which are incorporated by reference as terms of the MSA, explain what data Microsoft collects and uses, and give consumers such as Plaintiffs choices in managing their data privacy). Plaintiffs' privacy claims thus fall squarely within the scope of the MSA's arbitration agreement, under which Plaintiffs also agreed they would not bring a class action against Microsoft.

Plaintiffs cannot evade their legal obligation to arbitrate individually. Courts routinely enforce Microsoft's arbitration agreements and class action waivers under Federal Arbitration Act ("**FAA**") case law.[2] This Court should enforce the MSA, compel Plaintiffs' claims to individual arbitrations, and stay proceedings pending the outcome of those arbitrations.

## II. FACTUAL BACKGROUND

### A. Plaintiffs Created Microsoft Accounts That They Used to Browse on Edge.

Microsoft offers a variety of online services for consumers, including a service known as a "Microsoft account." Fogarty Decl. ¶ 2. With a Microsoft account, consumers can use a single set of credentials to sign into and customize their experiences and settings across a variety of Microsoft online services. *Id.* Using the Microsoft Edge web browser while logged into a Microsoft account provides further benefits, including the ability to sync data across devices and earn rewards for eligible online activities. Li Decl. Ex. A. Plaintiffs are four individuals who allege they used their Microsoft accounts. Compl. ¶¶ 9, 13, 18, 23. Plaintiffs allege they were "almost always" or "frequently" logged into their Microsoft accounts when web browsing on Edge, and that they have "consistently used Edge since at least June of 2021" or, in Plaintiff M.C.'s case, "since at least 2020." *Id.*; *see also id.* ¶¶ 187–90. Three Plaintiffs also allege using Bing as their "default search engine" when browsing on Edge. *Id.* ¶¶ 9, 13, 71. Plaintiffs bring claims based on Microsoft's purported data collection from their "internet browsing activities,

---

[2] *See, e.g.*, *J.A. v. Microsoft Corp.*, 2021 WL 1723454, *4 (W.D. Wash. 2021) (Theiler, J.); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, *1 (W.D. Wash. 2014) (Pechman, J.); *Walsh v. Microsoft Corp.*, 2014 WL 4168479, *1 (W.D. Wash. 2014) (same); *Day v. Microsoft Corp.*, 2014 WL 243159, *1 (W.D. Wash. 2014) (Martinez, J.); *Romanov v. Microsoft Corp.*, 2021 WL 3486938, *4 (D.N.J. 2021); *Maher v. Microsoft Corp.*, 2018 WL 1535043, *1 (N.D. Ill. 2018).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

internet searches, and online shopping behavior" while using Edge and Bing. *Id.* ¶ 2.

### B. Plaintiffs Agreed to Individual Arbitration in Creating and Continuing to Use Their Microsoft Accounts to Browse on Edge and Search on Bing.

#### 1. Plaintiffs' Creation of Microsoft Accounts and MSA Acceptances.

To create a Microsoft account, a user must first create credentials linked to an email address and password. Fogarty Decl. ¶ 3. Then, the user is presented with the following screen:




*Id.*

As shown above, to complete the process of creating a Microsoft account, a prospective user must click on the "Next" button directly below the notice indicating "Choosing **Next** means that you agree to the Microsoft Services Agreement and privacy and cookies statement." *Id.* ¶ 4. The phrases in blue contain hyperlinks that, when clicked, direct the user to a copy of the referenced MSA and privacy and cookies statement. *Id.* In other words, the user is given the option to review the MSA in its entirety, including the arbitration agreement, before deciding whether to accept. If a user fails to click "Next," he or she cannot create or use a Microsoft account. *Id.* All Microsoft account holders, therefore, must affirmatively agree to the then-current MSA to create a Microsoft account. *Id.* ¶ 5.

***Plaintiffs Wilkinson, Saeedy, and Shah***. Plaintiffs' counsel provided Microsoft email



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

addresses associated with three of four Plaintiffs' Microsoft accounts. Li Decl. Ex. B. Microsoft searched its records for these email addresses and identified three Microsoft accounts registered with those email addresses. Fogarty Decl. ¶ 8. Microsoft's records confirm Plaintiffs created their Microsoft accounts and agreed to the MSA in effect at the time on the following dates and times:

| Plaintiff | Email used to create Microsoft account | Date/time of Microsoft account creation and MSA acceptance | MSA in effect at time of MSA acceptance |
|---|---|---|---|
| **Wilkinson** | e************8@gmail.com | December 26, 2013, at 7:49:44 PM UTC | October 2012 MSA[3] |
| **Saeedy** | n*******y@gmail.com | April 13, 2015, at 6:37:40 PM UTC | July 2014 MSA[4] |
| **Shah** | V***********2@gmail.com | November 9, 2016, at 7:12:32 AM UTC | September 2016 MSA[5] |

*Id.* ¶ 8.

***Plaintiff M.C.*** Microsoft also asked for the email address used to create M.C.'s Microsoft account, as alleged in Paragraph 23 of the Complaint. Li Decl. Ex. C. Although M.C. alleges he is "almost always logged into his Microsoft account while using the Edge browser," Compl. ¶ 23, Plaintiffs' counsel refused to provide the email address M.C. used to create and access that account. Li Decl. Ex. C. But under Microsoft's account creation process, as described above, all Plaintiffs—including M.C.—had to affirmatively agree to the then-current MSA to successfully create a Microsoft account. Fogarty Decl. ¶ 5. No Plaintiff could have created a Microsoft account, much less logged into one to browse on Edge, without accepting the MSA. *Id.* ¶ 4.[6] From the earliest account creation date above, i.e., December 2013, to the present, the MSA has

---

[3] Fogarty Decl. Ex. B at 1–14 ("October 2012 MSA").

[4] *Id.* Ex. B at 15–27 ("July 2014 MSA").

[5] *Id.* Ex. B at 54–79 ("September 2016 MSA").

[6] The Microsoft account creation process has remained materially the same since October 2012 in requiring any prospective user to accept and agree to the hyperlinked MSA then in effect before the user can create and use a Microsoft account. *Id.* ¶ 5.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

been available online. *Id.* ¶ 10.

**2. Plaintiffs' Agreements to Binding Individual Arbitrations.**[7]

At the top of each MSA in effect when each Plaintiff created a Microsoft account, the MSA contained a notice directly below the title "Microsoft Services Agreement" indicating in bold and capitalized letters that the MSA "**CONTAINS A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER**" that "**AFFECTS YOUR RIGHTS ABOUT HOW TO RESOLVE ANY DISPUTE WITH MICROSOFT**" or that "**AFFECTS HOW DISPUTES ARE RESOLVED**."[8] The notice further directed Plaintiffs to review the specific section number within the MSA containing the binding arbitration agreement and class action waiver. *Supra* n.8.

The language in the arbitration agreement and class action wavier is materially identical across the MSA versions:

- The MSA that Plaintiff Wilkinson accepted requires that covered disputes "be conducted exclusively by binding arbitration," "solely on an individual basis," and not "as a class action." October 2012 MSA §§ 10.3, 10.4.
- The MSA that Plaintiff Saeedy accepted requires that covered disputes "be conducted exclusively by individual binding arbitration," "solely on an individual basis," and not "as a class action." July 2014 MSA §§ 10.3, 10.4.
- The MSA that Plaintiff Shah accepted requires "binding individual arbitration" and prohibits "[c]lass action lawsuits" of covered disputes. September 2016 MSA § 15.

In the MSA that Plaintiffs accepted when creating their Microsoft accounts, the MSA further provides that the term "dispute" should be construed broadly to encompass any dispute

---

[7] In filing this Motion, Microsoft is not waiving its right to compel arbitration based on other arbitration agreements that may apply to Plaintiffs. Plaintiffs' counsel refused to provide additional information necessary for Microsoft to determine, before filing this Motion, whether other arbitration agreements, such as the end-user license terms for Edge, may apply to Plaintiffs. Li Decl. Ex. C. Microsoft reserves the right to supplement or move separately if discovery identifies additional arbitration agreements covering Plaintiffs' claims.

[8] October 2012 MSA at 1; July 2014 MSA at 15; September 2016 MSA at 54.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

concerning "the Services," or the terms of the MSA, among other things, except for intellectual property disputes not relevant here. October 2012 MSA § 10; July 2014 MSA § 10; September 2016 MSA § 15(a). The list of "Services" covered expressly includes "Microsoft account" and "Bing." October 2012 MSA § 1; July 2014 MSA § 1.1; September 2016 MSA 76–78.

Plaintiffs further agreed that their continued use of the Services would constitute acceptance of any MSA changes that Microsoft notifies them about. October 2012 MSA § 1.4; July 2014 MSA § 1.3; September 2016 MSA § 7.

**3. Plaintiffs' Continued Assent to Individual Arbitrations.**

Microsoft makes periodic updates to the MSA and when it does so, it emails Microsoft account holders about the upcoming update before the effective date. Fogarty Decl. ¶ 7. Microsoft also notifies Microsoft account holders of updates through pop-up notices known as "interrupt" notices. *Id.* ¶ 7a. Interrupt notices appear when a Microsoft account holder accesses a Microsoft service online within a certain period after an MSA update. *Id.* ¶ 7b. The interrupt notice pops up on the user's screen stating that Microsoft has updated its MSA and provides a hyperlink to the full text of the MSA. *Id.* ¶ & Ex. D. To proceed with use of the Microsoft service, the Microsoft account holder must then click on a button to acknowledge the notice. *Id.*

In its most recent MSA update in September 2023, Microsoft sent an email to Microsoft account holders. *Id.* ¶ 7.a. The email provided a hyperlink—bolded and in blue text—to the updated MSA and a second hyperlink to an FAQ page summarizing changes to the MSA. *Id.* Ex. C. In this way, Microsoft gave Microsoft account holders the chance to review the updated MSA, including any updates to the arbitration agreement, before deciding whether to continue using Microsoft services. *Id.* The email reminded Microsoft account holders that they agree to the new terms by "continu[ing] use of the products and services" after the effective date of the update. *Id.* It also reminded Microsoft account holders to discontinue use and close their Microsoft accounts if they do not assent to the changed terms. *Id.*

Microsoft's records confirm that Plaintiffs Saeedy and Wilkinson (a) clicked on the interrupt notice to acknowledge the August 2022 MSA update; and (b) were emailed the 2023



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

MSA update email. *Id.* ¶¶ 8–9. Like previous versions, the September 2023 MSA included the binding individual arbitration agreement and class action waiver. *Id.* Ex. A § 15 ("September 2023 MSA").[9] Thus, not only have all Plaintiffs accepted (at the time of Microsoft account creation) earlier versions of the MSA requiring binding individual arbitration, these terms were further repeatedly presented to Plaintiffs Saeedy and Wilkinson, and rather than stop using their Microsoft accounts and Bing—as they were required to do if they did not accept the updated MSA—they acknowledged interrupt notices, were given notice of updates, and chose to keep using the covered services and accounts. *Id.* (requiring "binding individual arbitration" and prohibiting "class action lawsuits" of disputes concerning "the Services," including Bing; "your Microsoft account"; "these Terms" under the MSA; and "marketing"; among other things). As for Plaintiff Shah, his Microsoft account remains open, Fogarty Decl. ¶ 8(c), confirming his continued assent to the arbitration agreement and class action waiver he agreed to when creating his account (i.e., the September 2016 MSA). Plaintiff Shah never closed his Microsoft account, Fogarty Decl. ¶ 8(c), and, in fact, alleges he "was frequently logged into his Microsoft account while using the Edge browser." Compl. ¶ 13.

**4. Plaintiffs' Agreements to the Microsoft Privacy Statement.**

The MSA addresses privacy and states that Microsoft may collect, use, and disclose users' data in accordance with the Microsoft Privacy Statement ("**Privacy Statement**"), which is incorporated by reference and readily available to review through a prominent blue hyperlink in the MSA:

> Please read the Microsoft Privacy Statement (the "**Privacy Statement**") as it describes the types of data we collect from you and your devices ("**Data**"), how we use your Data, and the legal bases we have to process your Data. The Privacy Statement also describes how Microsoft uses your content …. Where processing is based on consent and to the extent permitted by law, *by agreeing to these Terms, you consent to Microsoft's collection, use and disclosure of Your Content and Data as described in the Privacy Statement*.

[9] Although the MSA has changed over time, *see generally* Fogarty Decl. Exs. A & B, all MSA provisions on which Microsoft relies are materially identical.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

September 2023 MSA § 1 (second emphasis added). The Privacy Statement explains the "personal data Microsoft processes, how Microsoft processes it, and for what purposes." Li Decl. Ex. D. It includes numerous provisions governing, among other things, use and sharing of user data and choices users may make about their data. *Id.* Notably, the Privacy Statement discloses Microsoft's data-collection practices concerning Edge and Bing as well as how users can customize their privacy settings. *Id.* at 49–55, 131–36 (under section titled "Search, Microsoft Edge, and artificial intelligence"). Earlier versions of the MSA, including each version that Plaintiffs accepted at the time they created their Microsoft accounts, also incorporated by reference a hyperlinked copy of Microsoft's privacy policies concerning data collection practices and how to customize privacy settings. October 2012 MSA § 5.1; July 2014 MSA §§ 2.1, 3.3, 5; September 2016 MSA § 1.

### C. Plaintiffs Ignored Their Agreements to Individual Arbitrations.

Plaintiffs agreed to binding individual arbitration of disputes concerning (a) their Microsoft accounts (which they allege they used in browsing on Edge); (b) their use of Bing; and (c) the terms of the MSA (which include Microsoft's privacy policies and data-collection disclosures that the MSA incorporates by reference). *See supra* Section II.B.2. But Plaintiffs disregarded their promise and have now twice flouted their legal obligation to arbitrate by filing separate lawsuits, first in federal court and again in state court.

On July 21, 2023, Plaintiffs Saeedy, Shah, Wilkinson, and a fourth individual filed suit in this District asserting claims for these alleged privacy violations (Case No. 2:23-cv-1104, the "First Action"). The First Action was assigned to Judge Barbara Rothstein. On December 21, 2023, Judge Rothstein granted Microsoft's motion to dismiss under Rule 12(b)(1) for lack of standing and allowed plaintiffs until January 22, 2024, to seek leave to file an amended complaint remedying the Article III deficiencies. *Saeedy*, 2023 WL 8828852, *7. Counsel for Plaintiffs Saeedy, Shah, and Wilkinson prepared an amended complaint, added allegations to remedy the Article III deficiencies—including, specifically, about their regular use of their Microsoft accounts while using Edge and Bing—and substituted a new fourth plaintiff (M.C.).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Instead of seeking leave to amend in federal court, they filed the amended complaint as a new action in King County Superior Court, thereby initiating the above-captioned lawsuit. Plaintiffs' counsel filed a Notice of Voluntary Dismissal in the First Action. First Action Dkt. 45. Because the new Complaint now includes amended allegations addressing the previous Article III deficiencies, Microsoft timely removed the state court lawsuit to this Court. Dkt. 1.

## III. ARGUMENT

### A. The FAA Requires Courts to "Rigorously" Enforce Agreements to Arbitrate.

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects federal policy recognizing that "arbitration is a matter of contract, and courts *must* enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (emphasis added). Congress enacted the FAA to overcome judicial hostility to arbitration because "in Congress's judgment arbitration ha[s] more to offer than courts recognize[]—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (the FAA "requires courts 'rigorously' to 'enforce arbitration agreements'").

As a result, "[t]he FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). If the court answers both questions in the affirmative, it "*must* order the parties to proceed to arbitration in accordance with the terms of the agreement." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509–10 (9th Cir. 2023) (emphasis added). Here, the Court should compel individual arbitrations and stay the action because valid arbitration agreements exist and cover each Plaintiff's claims.

### B. The Court Should Compel Individual Arbitrations of Plaintiffs' Claims.

#### 1. Plaintiffs Entered Valid Arbitration Agreements with Microsoft.

Plaintiffs agreed to binding individual arbitration because each had ample opportunity to



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

read and manifested assent to the arbitration agreement and class action waiver in the MSA when creating a Microsoft account. *See supra* Section II.B.2.

In fulfilling the first step of the Court's gatekeeping function under the FAA, the Court must confirm the formation of an arbitration agreement, namely the element of mutual assent. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). The Court applies state law governing contract formation. *Perez v. Discover Bank*, 74 F.4th 1003, 1010 (9th Cir. 2023). Although California law governs two Plaintiffs' claims and Washington law governs the other two Plaintiffs' claims,[10] the touchstone for contract formation is materially the same in both states. *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 290–91 nn.7–8 (2d Cir. 2019) (observing that California and Washington courts apply substantially similar rules for determining contract formation); *Stock v. Wells Fargo*, 2023 WL 5505839, *5 (C.D. Cal. 2023) (same).

California and Washington law both look to a party's objective manifestation of intent to be bound by the agreement to confirm the existence of mutual assent. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270–71 (2001), *as modified* (Sept. 12, 2001) ("objective manifestation of the party's assent ordinarily controls"); *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177–78, 949 (2004) ("the parties must objectively manifest their mutual assent"). A contract exists between the parties as long as each "was not deprived of the opportunity to read it" before manifesting assent. *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, *2 (W.D. Wash. 2017) (compelling arbitration); *see also Taylor v. Eclipse Senior Living, Inc.*, 2022 WL 1004560, *2 (S.D. Cal. 2022) (compelling arbitration; failure to read terms is "legally irrelevant" and cannot invalidate assent when plaintiff had opportunity to review terms).

For agreements presented online, courts applying California and Washington law find mutual assent when "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a

[10] Under the MSA, the "laws of the state where [the plaintiff] live[s]" governs the plaintiff's claims. September 2023 MSA § 11; September 2016 MSA § 11. According to the Complaint, Plaintiffs Shah and Saeedy reside in California, Compl. ¶¶ 7, 11, and Plaintiffs Wilkinson and M.C. reside in Washington, *id.* ¶¶ 15, 20.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein*, 60 F.4th at 515 (applying California law); *see Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, *2–3 (W.D. Wash. 2019) (applying similar test under Washington law; collecting cases analyzing mutual assent in the context of online transactions). The presentment of the MSA in Microsoft's account creation process easily satisfies both requirements.

*First*, "reasonable notice … is all that is required." *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, *7 (W.D. Wash. 2019). The notice presented here clears that standard. Microsoft provided conspicuous notice of the MSA by (a) placing the notice immediately above the action button without the need to scroll around to locate it; (b) stating expressly that clicking the action button means "you agree to the Microsoft Services Agreement"; (c) setting off "Microsoft Services Agreement" in a distinct color distinguishable from the surrounding text and in a blue color commonly known to denotate a hyperlink; and (d) hyperlinking the MSA so that Plaintiffs each had the opportunity to review the linked MSA, including its binding arbitration agreement and class action waiver, before deciding whether to click to proceed. Fogarty Decl. ¶ 3.

*Second*, Plaintiffs each manifested assent to the MSA because each clicked the button directly below the notice to continue in the process of creating a Microsoft account. *Id.* ¶ 4. In fact, had Plaintiffs not manifested their assent to the MSA by clicking the button, they would not have been able to create, let alone use, a Microsoft account to web browse on Edge, as they now allege to have done. *Supra* Section II.C; *compare* Fogarty Decl. ¶ 4, *with* Compl. ¶¶ 9, 13, 18, 23. Thus, Plaintiffs had not only notice but ample opportunity to review the MSA, including the arbitration agreement and class action waiver, if they wanted to, before deciding whether to click on the action button to accept the MSA as a necessary step to creating a Microsoft account.

The Ninth Circuit has repeatedly found mutual assent based on online agreements presented and agreed to under materially identical circumstances as here. In *Oberstein*, the Ninth Circuit affirmed an order compelling arbitration, finding that the notice was "reasonably conspicuous" because it was "displayed directly above or below the action button"; its language "clearly denote[d]" that further action would "act as a manifestation of the user's intent to be



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

bound"; and "crucially, the [] hyperlink [to the terms was] conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." 60 F.4th at 516. No more was needed to convince the Ninth Circuit "that a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Id.* Just this month, the Ninth Circuit again affirmed an order compelling arbitration based on terms containing an arbitration agreement presented as a hyperlinked notice during the account creation process for certain e-commerce websites. *Patrick v. Running Warehouse, LLC*, --- F.4th ----, 2024 WL 542831, *4–5 (9th Cir. 2024). The Ninth Circuit concluded the notice was "reasonably conspicuous" even if the "links [were] not blue, underlined, or capitalized." *Id.* It was enough that the notice was "on an uncluttered page"; "not hidden"; "clear and legible"; "hyperlinked [in] bright green—contrasted against the surrounding white background and adjacent black text"; and in "the same color as other clickable links on the page." *Id.* In both *Oberstein* and *Patrick*, the Ninth Circuit found the second requirement—"whether the user took some action that unambiguously manifested the user's assent to the agreement"—easily met because the notice "explicitly alert[ed] the user that by creating an account … and proceeding to the next page, the user 'agrees to our Terms of Use.'" *Oberstein*, 60 F.4th at 517; *see also Patrick*, 2024 WL 542831, *4–5 (users "manifested assent to the Terms" when clicking an action button above the notice).

This Court should find that Plaintiffs manifested assent to the MSA, including its arbitration agreement and class action waiver, because how the MSA was presented is materially identical to the circumstances in *Oberstein* and *Patrick*. This outcome is further supported by the decisions, including many from this District, that found *these same Microsoft notices* created valid arbitration agreements[11] and enforced similar Microsoft online arbitration agreements.[12] Indeed, the Ninth Circuit and other courts in this Circuit, applying Washington and California

[11] *See J.A.*, 2021 WL 1723454, at *4, ECF No. 47 (granting motion to compel arbitration based on notice with "Next") (image available at Case No. 20-cv-0640, ECF No. 37, Ex. K); *Day*, 2014 WL 243159, at *1 (granting motion to compel arbitration based on notice with "I Agree").

[12] *See Romanov*, 2021 WL 3486938, at *4; *Maher*, 2018 WL 1535043, at *1; *Mendoza*, 2014 WL 4540225, at *1; *Walsh*, 2014 WL 4168479, at *1.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

law, have enforced online arbitration agreements similarly or even less conspicuously presented during the plaintiff's account creation or registration process.[13]

Because each Plaintiff had notice of the MSA and manifested assent by clicking on the button directly below the notice to complete the Microsoft account creation process, each Plaintiff agreed to binding individual arbitration of disputes covered by the agreement.[14]

**2. The Arbitration Agreement Covers Plaintiffs' Claims.**

Once it is shown that the parties have a contract that provides for arbitration of some issues between them, "there is a presumption of arbitrability," and any "doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650 (1986); *see also Johnson v. Walmart Inc*., 57 F.4th 677, 680–81 (9th Cir. 2023) (any "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration").

---

[13] *See Lee v. Ticketmaster L.L.C*., 817 F. App'x 393, 395 (9th Cir. 2020) (affirming order compelling arbitration because user assented each time he clicked action button above hyperlinked notice); *Munning v. Nordstrom, Inc*., 2020 WL 1528477, *1 (W.D. Wash. 2020) (compelling arbitration because plaintiff "had reasonable notice" that her account registration was subject to terms "available through a co-located hyperlinked alert"); *In re Wyze Data Incident Litig*., 2020 WL 6202724, *2-3 (W.D. Wash. 2020) (compelling arbitration when "any person who had such a user account could not have accessed his or her account without, at some point, clicking a box indicating that he or she agreed to Defendant's terms and conditions"); *Tater v. OANDA Corp*., 2019 WL 4597517, *6–7 (W.D. Wash. 2019) (compelling arbitration because plaintiff assented when he "had to click through and agree to the Customer Agreement" to open account); *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 79-80 (2d Cir. 2017) (vacating denial of motion to compel arbitration because, under California law, user accepted terms available via hyperlink to create account); *Gurule v. Airbnb, Inc*., 2023 WL 8438545, *3 (C.D. Cal. 2023) (compelling arbitration because "Plaintiff assented to the terms of Airbnb's TOS when he created his account"); *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, *8 (N.D. Cal. 2017) (compelling arbitration because plaintiff assented to terms "visible via a hyperlink" below the buttons "Accept and Continue" and "Sign In").

[14] Plaintiff Shah's Microsoft account remains open, Fogarty Decl. ¶ 8(c), confirming his continued assent to the arbitration agreement and class action waiver he agreed to when creating his account (i.e., the September 2016 MSA). He never closed his Microsoft account and alleges he "was frequently logged into his Microsoft account while using the Edge browser." Compl. ¶ 13. Plaintiffs Wilkinson and Saeedy repeatedly manifested assent to the arbitration agreement and class action waiver because these terms were repeatedly presented, and they continued to reaffirm their obligation to arbitrate by acknowledging interrupt notices and affirmatively choosing to continue using their Microsoft accounts rather than close it, as Microsoft instructed them to do if they chose not to accept the updated terms. *Supra* Section II.B.3; *see also Sadlock v. Walt Disney Co*., 2023 WL 4869245, *12–13 (N.D. Cal. 2023) (plaintiff assented to updates due to continued use after receiving notice of updates); *Walters v. Chase Manhattan Bank*, 2008 WL 3200739, *3 (E.D. Wash. 2008) (same).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The MSA's arbitration agreement encompasses Plaintiffs' claims. The definition of "dispute" covers "any claim or controversy" "concerning the Services, the software related to the Services, … your Microsoft account," "or these Terms" under the MSA, among other things.[15] The term "dispute" should be construed "as broad as it can be." *Supra* n.15. Plaintiffs' claims map to this broad definition of "dispute" in at least three ways. First, Plaintiffs' claims concern their Microsoft accounts, which they allege they used to web browse on Edge. *See* Compl. ¶¶ 9–24. In fact, Plaintiffs' allegations that Microsoft collected browsing data linked to their Microsoft accounts are the very allegations they added to address Judge Rothstein's finding that Plaintiffs had not alleged how "the data collected can be associated with their names." *Saeedy*, 2023 WL 8828852, at *5 n.6. Second, Plaintiffs allege Microsoft collected their search history when they used Bing as their "default search engine" on Edge, and Bing is expressly listed as a "Service" covered under the definition of "dispute" in the arbitration agreement. Compl. ¶¶ 9–24; *supra* n.15. Third, Plaintiffs' claims concern Microsoft's alleged collection of Plaintiffs' data, a matter squarely within the privacy policies and disclosures incorporated by reference in the MSA and therefore encompassed as a dispute about the terms of the MSA.[16] *Supra* n.15.

Plaintiffs' claims fit comfortably within the "broad" arbitration agreement, and any uncertainty about its scope "should be resolved in favor of arbitration …." *Johnson*, 57 F.4th at 680-81. Courts in this District have found plaintiffs' claims to fall easily within the scope of the MSA's "broad 'dispute' provision." *Mendoza*, 2014 WL 4540225, at *4 (claims relating to Xbox

---

[15] September 2016 MSA § 15(a); September 2023 MSA § 15(a). Microsoft updated the MSA in September 2023, and Plaintiffs Wilkinson and Saeedy accepted the updated MSA. *Supra* Section II.B.3. Microsoft thus focuses on the September 2016 MSA (that Plaintiff Shah accepted at time of account creation) and the September 2023 MSA that the other two Plaintiffs accepted more recently, but the result is the same under the definition of "dispute" in the MSA versions that the Plaintiffs accepted at time of account creation. October 2012 MSA § 10; July 2014 MSA § 10; September 2016 MSA § 15(a).

[16] The Privacy Statement explains how Microsoft collects data from users and authorizes Microsoft to use that data in certain ways. *See supra* Section II.B.4. The Privacy Statement will be central to Plaintiffs' claims that they never consented to the alleged data collection and use. *See, e.g.*, Compl. ¶¶ 186-90. The scope of Plaintiffs' consent to the collection and use of their data is thus a dispute over "these Terms" in the MSA and a covered dispute.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

fell within scope of MSA's arbitration agreement); *Walsh*, 2014 WL 4168479, at *3 (same). When an arbitration agreement is "broad," as here, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*, 475 U.S. at 650. Plaintiffs cannot overcome this presumption of arbitrability. *Amirhamzeh v. Wells Fargo Bank, N.A.*, 2014 WL 12610227, *1 (N.D. Cal. 2014) (enforcing "extremely broad" arbitration agreement that covered "any disputes"); *Diaz v. Intuit, Inc.*, 2017 WL 4355075, *3 (N.D. Cal. 2017) (compelling arbitration of claims where "broad" arbitration agreement required arbitration of "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT").

### C. The Court Should Stay This Action Pending Individual Arbitrations.

The FAA requires staying proceedings after granting a motion to compel arbitration on the application of a party. *See* 9 U.S.C. § 3. The Court should stay Plaintiffs' claims pending the outcome of Plaintiffs' individual arbitrations.

## IV. CONCLUSION

Microsoft respectfully requests that the Court compel Plaintiffs to arbitrate their claims on an individual basis and stay the case pending resolution of those individual arbitrations.

DATED this 23rd day of February, 2024.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Microsoft Corporation*

By: *s/ Fred B. Burnside**
Stephen M. Rummage, WSBA #11168
Fred B. Burnside, WSBA #32491
Jaime Drozd, WSBA #35742
Xiang Li, WSBA #52306
Caleah Whitten, WSBA #60209
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
steverummage@dwt.com
fredburnside@dwt.com
jaimedrozd@dwt.com
xiangli@dwt.com
caleahwhitten@dwt.com

James Moon, *pro hac vice* forthcoming
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: jamesmoon@dwt.com

*I certify that this memorandum contains 5,489 words, in compliance with the Local Civil Rules.