The Honorable S. Kate Vaughan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOAH SAEEDY, VISHAL SHAH, TINA WILKINSON, and M.C., a minor, by and through his natural parent and legal guardian, Moses Chatmann III, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>Defendant. | No. 2:24-cv-00219-SKV<br><br>**MICROSOFT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>**NOTE ON MOTION CALENDAR: July 19, 2024**<br><br>**ORAL ARGUMENT REQUESTED** |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Microsoft Did Not Waive Its Right to Arbitrate. .......... 2

B. The Edge End-User Licensing Terms Do Not Change the Outcome. .......... 4

C. Plaintiffs Are Required to Arbitrate Under the MSA. .......... 6

1. Plaintiffs Assented to the MSA .......... 6

2. Plaintiffs' Claims Fall Within the Broad Scope of the MSA .......... 9

D. Plaintiffs Fail to Establish the MSA Is Unenforceable. .......... 13

1. The MSA Is Not Procedurally Unconscionable .......... 13

2. The MSA Is Not Substantively Unconscionable. .......... 15

III. CONCLUSION .......... 17




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. 2020) ....................14

*Armstrong v. Michaels Stores, Inc.*,
2018 WL 6505997 (N.D. Cal. 2018) ....................3

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) ....................2, 3

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ....................9, 10

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................14

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) ....................16

*Burgess v. Buddy's Nw. LLC*,
2016 WL 7387099 (W.D. Wash. 2016) ....................3

*Cage v. Cach, LLC*,
2014 WL 2170431 (W.D. Wash. 2014) ....................4

*Day v. Microsoft Corp.*,
2014 WL 243159 (W.D. Wash. 2014) ....................8

*Dornaus v. Best Buy Co.*,
2019 WL 632957 (N.D. Cal. 2019) ....................16

*Fama v. Opportunity Fin. LLC*,
2023 WL 9954028 (W.D. Wash. 2023) ....................16

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) ....................16

*G.G. v. Valve Corp.*,
2017 WL 1210220 (W.D. Wash. 2017) ....................13



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Ghazizadeh v. Coursera, Inc.*,
2024 WL 3455255 (N.D. Cal. 2024) ....................8, 9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ....................13

*Grigorian v. Citibank, N.A.*,
2024 WL 2106944 (C.D. Cal. 2024) ....................15

*Hansen v. Rock Holdings, Inc.*,
434 F. Supp. 3d 818, 826 (E.D. Cal. 2020) ....................6

*Harbers v. Eddie Bauer, LLC*,
2019 WL 6130822 (W.D. Wash. 2019) ....................8

*Hernandez v. Experian Info. Sols., Inc.*,
2022 WL 17098188 (C.D. Cal. 2022) ....................12

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ....................15

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ....................7, 8, 13, 14

*Int'l Ambassador Programs, Inc. v. Archexpo*,
68 F.3d 337 (9th Cir. 1995) ....................5

*J.A. through Allen v. Microsoft Corp.*,
2021 WL 1723454 (W.D. Wash. 2021) ....................8, 16

*Jackson v. Amazon*,
65 F.4th 1093 (9th Cir. 2023) ....................10, 11

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ....................5, 12, 13

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ....................4

*McMahon v. Meta Platforms, Inc.*,
2023 WL 4546377 (W.D. Wash. 2023) ....................12

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ....................2, 4

*Mortensen v. Bresnan Commc'ns, LLC*,
722 F.3d 1151 (9th Cir. 2013) ....................13



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).....12

*Newirth v. Aegis Senior Cmtys., LLC*,
931 F.3d 935 (9th Cir. 2019).....4

*Nguyen v. Tesla, Inc.*,
2020 WL 2114937 (C.D. Cal. 2020).....16

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023).....8

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024).....8

*Pokrass v. The DirecTV Grp., Inc.*,
2008 WL 2897084 (C.D. Cal. 2008).....14

*Powell v. United Rentals (N. Am.), Inc.*,
2019 WL 1489149 (W.D. Wash. 2019).....7, 8

*Prasad v. Barclays Bank Del.*,
2020 WL 6083663 (C.D. Cal. 2020).....4

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. 2023).....2, 4, 10

*Sicor Ltd. v. Cetus Corp.*,
51 F.3d 848 (9th Cir. 1995).....6

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999).....12

*Smith v. Spizzirri*,
601 U.S. 472 (2024).....17

*Snow v. Eventbrite, Inc.*,
2020 WL 6135990 (N.D. Cal. 2020).....7

*T.D. Williamson, Inc. v. Assoc. Eng'rs, India*,
2013 WL 6628222 (N.D. Okla. 2013).....6

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003).....15

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016).....16



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Torres v. Veros Credit LLC*,
2023 WL 5505887 (C.D. Cal. 2023)....15

*U.S. ex. rel. Welch v. My Left Foot Childs. Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) ....10, 11

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
995 F. Supp. 1060 (D. Ariz. 1997) ....6

*Wayans v. BMW of N. Am., LLC*,
2020 WL 2046392 (C.D. Cal. 2020)....3

*Zamudio v. Aerotek, Inc.*,
2024 WL 2055146 (E.D. Cal. 2024)....10

**State Cases**

*Adler v. Fred Lind Manor*,
153 Wn.2d 331 (2004) ....16

*Burnett v. Pagliacci Pizza, Inc.*,
196 Wn.2d 38 (2020) ....13, 14

*Chauvlier v. Booth Creek Ski Holdings, Inc.*,
109 Wn. App. 334 (2001) ....17

*Lewis v. YouTube, LLC*,
244 Cal. App. 4th 118 (2015) ....17

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ....13, 15

*Mendez v. Palm Harbor Homes, Inc.*,
111 Wn. App. 446 (2002) ....13

*Radliff v. Schmidt*,
27 Wn. App. 2d 205, 210 (2023) ....5

*Ramirez v. Charter Commc'ns, Inc.*,
2024 WL 3405593 (Cal. 2024)....16

*Ramos v. Super. Ct.*,
28 Cal. App. 5th 1042 (2018) ....10, 11

*Sandquist v. Lebo Auto., Inc.*,
1 Cal. 5th 233 (2016) ....12

*Smith v. Johnson*,
118 Wn. App. 1029 (2003) ....6



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Federal Statutes**

9 U.S.C. § 2 ....................12

**Rules**

Federal Rules of Evidence
801 ....................6
802 ....................6
803 ....................6



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Plaintiffs cannot avoid their agreement to arbitrate. They each allege as the foundation of the operative Complaint that they created Microsoft accounts and used such accounts while browsing on Edge. Those Microsoft accounts are governed by the MSA, which requires individual arbitration of any dispute "concerning" in any way the "Covered Services," including their Microsoft accounts. Despite these undisputed facts, Plaintiffs argue that (1) Microsoft waived its right to arbitrate by not moving to compel arbitration in the related, previously filed action, Case No. 2:23-cv-1104 (the "First Action"); (2) the end-user licensing terms for Edge govern their claims; (3) they never assented to the MSA or their claims fall outside its scope; and (4) the MSA is unconscionable. Plaintiffs are wrong on each point.

*First*, Plaintiffs fail to meet their burden to prove Microsoft waived its right to compel arbitration by not moving to compel in the First Action. This action is materially different from the First Action because Plaintiffs now plead that they were logged into their Microsoft accounts while browsing Edge—making the MSA and its arbitration provision applicable.

*Second*, Plaintiffs' arguments regarding Edge's end-user licensing terms are misguided because, as they argue, they did not agree to them. Even if they had, the plain language of those terms and the MSA show they work in concert. The contract Plaintiffs claim governs Edge use (the Edge end-user agreement) does not limit the one they did agree to (the MSA).

*Third*, Microsoft showed that Plaintiffs assented to the MSA and that the present dispute falls within the broad scope of the MSA. The click-through process they had to use to sign up for their Microsoft accounts provides sufficient notice to evidence their assent. Plaintiffs' claims fall squarely within the scope of the MSA because their use of Microsoft accounts (a "Covered Service") is central to their allegations.

*Fourth*, Plaintiffs fail to carry their burden to show unconscionability. They identify no valid deficiency in how the arbitration agreement was presented nor any unfair or one-sided terms. Plaintiffs also fail to identify any actual request for public injunctive relief that the MSA would foreclose.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Because the MSA is enforceable, the Court should compel Plaintiffs to individually arbitrate their claims and stay this action until the parties complete their individual arbitrations.

## II. ARGUMENT

### A. Microsoft Did Not Waive Its Right to Arbitrate.

Plaintiffs first argue Microsoft waived its right to arbitrate by defending itself in the First Action. Dkt. 47 ("Opp.") at 11-12. Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). Plaintiffs bear the burden of establishing waiver, which requires proving both "(1) knowledge of an existing right to compel arbitration" and "(2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023). They fail on both elements.

*First*, Plaintiffs make *no* argument Microsoft knew of a right to compel arbitration prior to the instant action. As Judge Rothstein noted, the First Action did not include any allegations that Plaintiffs were "logged into a Microsoft account either before or during their browsing activities," *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, *5 n.6 (W.D. Wash. 2023), such that Plaintiffs' agreement to the MSA became relevant. That changed, as the Court recognized, when Plaintiffs amended the original complaint and filed this action. *See* Dkt. 42 at 4, 15 (order denying remand and noting new allegations Plaintiffs were logged in to their Microsoft accounts while browsing on Edge).

Indeed, Plaintiffs refused to provide the information Microsoft repeatedly requested to try to determine whether an arbitration agreement applied to the First Action. Dkt. 8-2 (Li Decl. Ex. B); Dkt. 8-3 (Li Decl. Ex. C). Plaintiffs' gamesmanship is not evidence of waiver by Microsoft. Microsoft repeatedly and expressly reserved its right to compel arbitration throughout the First Action given the missing information. *See, e.g.*, First Action Dkt. 36 at 6 n.3 ("Plaintiffs' counsel refused to provide information necessary for Microsoft to determine … whether any Plaintiff agreed to individual arbitration."); First Action Dkt. 42 at 4 (noting the limited information Plaintiffs' counsel provided "is not sufficient for Microsoft to determine whether any Plaintiff agreed to individual arbitration. Microsoft reserves the right to move to compel arbitration if



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

discovery shows any Plaintiff agreed to arbitrate."). The information requested would have, for example, enabled Microsoft to determine what license terms applied to the device each Plaintiff used to run Edge. Dkt. 6 ("Mot.") at 5 n.7 ("Plaintiffs' counsel refused to provide additional information necessary for Microsoft to determine, before filing this Motion, whether other arbitration agreements, such as the end-user license terms for Edge, may apply to Plaintiffs."); Opp. at 14 (contending the end-user license terms for Edge require arbitration for non-Windows users but not Windows users).

*Second*, Plaintiffs fail to show that Microsoft acted inconsistently with its arbitration right. Courts "consider the totality of the parties' actions" and find inconsistency in limited circumstances when there is evidence of (1) "an intentional decision not to move to compel arbitration"; and (2) prolonged, active litigation of the merits "to take advantage of being in court." *Armstrong*, 59 F.4th at 1015. Microsoft did neither. Contrary to "an intentional decision not to move to compel arbitration," Microsoft has been "consistently vocal about its intent to move to compel arbitration," throughout the First Action once Microsoft obtained the information necessary to do so. *Id*. Once Plaintiffs added allegations concerning their use of Edge while signed into Microsoft accounts—admitting they created Microsoft accounts and placing their allegations squarely within the MSA's scope—Microsoft promptly moved to compel arbitration. In addition, Microsoft "did not actively litigate the merits of the case for a prolonged period to take advantage of being in court." *Id.*[1] Microsoft removed the action and moved to compel arbitration within *one month* of Plaintiffs filing this new action. Microsoft never wavered about its intent to individually arbitrate.

---

[1] Microsoft's removal in this case and compliance with initial-stage discovery obligations in the First Action do not support waiver. *E.g., Wayans v. BMW of N. Am., LLC*, 2020 WL 2046392, *4 (C.D. Cal. 2020) ("removal of this action and participation in preliminary discovery does not sufficiently establish acting inconsistently with the right to arbitrate"); *Armstrong v. Michaels Stores, Inc.*, 2018 WL 6505997, *10 (N.D. Cal. 2018) ("courts have consistently rejected the argument that a party waived the right to compel arbitration by removing a case to federal court), *aff'd*, 59 F.4th 1011 (9th Cir. 2023); *Burgess v. Buddy's Nw. LLC*, 2016 WL 7387099, *4 (W.D. Wash. 2016) ("exercise of Defendants' right to remove the state-court action to federal court … is not sufficiently inconsistent with their right to arbitrate").



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs' caselaw to the contrary is inapt. Opp. at 12 (citing *Morgan*; *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935 (9th Cir. 2019); and *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016)). *Morgan* simply abrogated the Eighth Circuit's rule requiring a showing of prejudice to find waiver of arbitration; it did not opine on whether waiver occurred. 596 U.S. at 419 ("The Court's sole holding today is that [the Eighth Circuit] may not make up a new procedural rule based on the FAA's 'policy favoring arbitration.'"). In *Newirth*, the defendant moved to compel arbitration, withdrew that motion, filed a motion to dismiss, lost on the motion to dismiss, and then refiled its motion to compel arbitration. 931 F.3d at 942. And in *Martin*, the defendants "did not even note their right to arbitration until almost a year into the litigation" and stated "they were likely 'better off' in federal court." 829 F.3d at 1126. None of these circumstances is present here.

Microsoft did move to dismiss the First Action, but that was before Plaintiffs made any allegations about browsing while signed into Microsoft accounts, which made their claims arbitrable under the MSA. *Saeedy*, 2023 WL 8828852, *5 n.6 ("Plaintiffs allege that the data collected can be associated with their names but they allege that this association can be made when the user is logged into a Microsoft account. None of the Plaintiffs allege that they logged into a Microsoft account either before or during their browsing activities."). Courts do not find waiver based on litigation conduct in a separate lawsuit that does not implicate the basis for the arbitration claim. *See Cage v. Cach, LLC*, 2014 WL 2170431, *1 (W.D. Wash. 2014) ("Although the decision to file a suit, participate in litigation, and later seek to compel arbitration may constitute a waiver … plaintiffs initiated this separate lawsuit against defendants, and defendants responded by invoking the arbitration agreements."); *Prasad v. Barclays Bank Del.*, 2020 WL 6083663, *3 (C.D. Cal. 2020) ("litigating certain claims in one proceeding does not preclude a party from seeking to arbitrate other claims in another proceeding").

### B. The Edge End-User Licensing Terms Do Not Change the Outcome.

Plaintiffs seek to avoid application of the MSA by arguing that the Edge end-user licensing terms ("Edge EULA") is a separate agreement that exclusively governs their Edge use.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Opp. at 12–14. But Plaintiffs' own allegations undermine their position that they agreed to the Edge EULA. *See id.* at 16 ("Plaintiffs' computers came with Edge predownloaded and Plaintiffs were never required to consent to any terms to use Edge"), 17 (recognizing mutual assent is required for a contract). This fact distinguishes Plaintiffs' caselaw, which involved two binding agreements concerning separate subject matter.[2] Opp. at 12–13 (citing *Int'l Ambassador Programs, Inc. v. Archexpo*, 68 F.3d 337, 339–40 (9th Cir. 1995); *Johnson v. Walmart Inc.*, 57 F.4th 677, 682 (9th Cir. 2023)).

But none of this matters, because nothing supports Plaintiffs' assumption that the Edge EULA and MSA are somehow mutually exclusive[3]—i.e., a contract Plaintiffs claim they did not agree to would somehow supersede the one they did. That assumption is belied by the plain terms of the Edge EULA, which contemplate other terms (e.g., the MSA) applying: "Your use of Other Services or of Software features that rely on Other Services may be governed by separate terms and subject to separate privacy policies." Dkt. 48 at 38 & 39 (Hart Decl. Ex. B). Thus the plain language of these terms evince the parties' intent that other terms would also apply, such as the MSA, which governs features related to Edge but separate from its software. It is also plain from the agreements that they work together to explain users' rights regarding interrelated products. For example, the Edge EULA governs the Edge "software, its price, or this

[2] Microsoft presently lacks information to address whether Plaintiffs accepted the Edge or Windows EULAs, as this question turns on factual questions such as Plaintiffs' device identifiers, whether those devices were Windows devices that came with the Windows operating system and Edge pre-installed, and which devices Plaintiffs used to browse Edge. This information is in Plaintiffs' exclusive control. Microsoft has asked for it but Plaintiffs have refused to provide it. Dkt. 8-3. Microsoft reserves its rights under any other applicable agreement Plaintiffs may have entered into with Microsoft, many of which also include individual arbitration agreements.

[3] No Plaintiff claims that was their expectation; nor would it matter. *Johnson*, 57 F.4th at 682 ("In California, '[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting.'") (quoting Cal. Civ. Code. § 1636); *Radliff v. Schmidt*, 27 Wn. App. 2d 205, 210 (2023) ("Our courts follow the 'objective manifestation theory' of contracts, wherein the parties'[] intent is determined by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties.").



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agreement," Dkt. 48 at 52 (Hart Decl. Ex. D), whereas the MSA governs, among other things, Bing, Microsoft accounts, and Microsoft's privacy policies, Dkt. 7-1 at 32–35. And importantly, Plaintiffs base their claims on Microsoft's alleged collection of their Edge browsing and Bing search data via their Microsoft accounts, and Bing and their Microsoft accounts are indisputably "Covered Services" under the MSA.[4]

### C. Plaintiffs Are Required to Arbitrate Under the MSA.

#### 1. Plaintiffs Assented to the MSA.

Plaintiffs do not dispute they were presented with the MSA via a hyperlink, and that they had to click through a page where this MSA hyperlink was conspicuously presented to create their Microsoft accounts.[5] Opp. at 18–19. Plaintiffs' attempt to disclaim assent with vague statements that they do not recall receiving notice of the MSA. Dkt. 50 ("Saeedy Decl.") ¶ 20;

[4] Even if the Edge EULA were to also apply, it too contains an individual arbitration agreement. Dkt. 48 at 41 (Ex. B) ¶ 2.14.

[5] M.C.'s father states that "M.C. has confirmed that he has never created a Microsoft account for the use of any of Microsoft's products or services, including Edge." Dkt. 49 ("Chatmann Decl.") ¶ 6. But this third-party declaration squarely contradicts plaintiff M.C.'s binding judicial admission that he "is almost always logged into his Microsoft account while using the Edge browser, even when using the browser in Private Mode." Dkt. 1-1 ("Compl.") ¶ 23; *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995) ("[A] statement in a complaint may serve as a judicial admission."). This information is squarely within M.C.'s knowledge and he has not provided any explanation for the discrepancy between his allegations and his father's contrary statements. *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065–66 (D. Ariz. 1997) (disregarding plaintiff's attempt to withdraw admissions where it appeared to be "a stratagem to avoid arbitration"); *T.D. Williamson, Inc. v. Assoc. Eng'rs, India*, 2013 WL 6628222, *5 (N.D. Okla. 2013) ("Plaintiff makes allegations in the proposed second amended complaint that directly contradict the allegations of the original and amended complaints, and there is no possibility that plaintiff's error could be classified as an innocent mistake or a clarification based on newly discovered evidence."). The declaration also attempts to unwind the Court's remand order, which found standing, in part, based on the Complaint's allegations that "Plaintiffs were frequently, or in in Plaintiff M.C.'s case 'almost always', logged in to their Microsoft accounts when using Edge." Dkt. 42 at 4, 15, 20. Beyond that, the declaration is inadmissible hearsay that the Court should not consider. *See* Fed. R. Evid. 802, *Hansen v. Rock Holdings, Inc.*, 434 F. Supp. 3d 818, 826 (E.D. Cal. 2020) ("Because plaintiff has not established he has personal knowledge of Willena's actions that occurred outside of his presence, and therefore he could not have personal knowledge of his testimony in paragraph five, defendants' objection is SUSTAINED."), *vacated & remanded on other grounds sub nom. Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667 (9th Cir. 2021). There is no hearsay exception based on the parent-child relationship. Fed. R. Evid. 801, 803; *see also Smith v. Johnson*, 118 Wn. App. 1029, 2003 WL 22054222, *3–4 (affirming exclusion of father's declaration containing out-of-court statements from child offered for the truth of the matter asserted).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dkt. 51 ("Shah Decl.") ¶ 17; Dkt. 52 ("Wilkinson Decl.") ¶ 20; Chatmann Decl. ¶ 13. But Plaintiffs' self-serving assertions that they do not recall the process are not enough. Where Microsoft "has offered evidence that Plaintiffs checked a box agreeing to [the MSA] when they created their [Microsoft] accounts. Plaintiffs' bare assertion that they do not recall this process does not overcome [Microsoft's] evidence." *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 942 (N.D. Cal. 2023); *see also Powell v. United Rentals (N. Am.), Inc.*, 2019 WL 1489149, *3 (W.D. Wash. 2019) (parties entered agreement because, although plaintiff "attests that he does not recall executing the Agreement, he does not dispute [defendant's] evidence showing that he was presented with a copy" that he signed).

Plaintiffs offer no evidence to counter Microsoft's. They contend it is not clear whether the screenshot of the account creation process "was the only way the page has appeared between 2012 and the present." Opp. at 20 (citing *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, *5 (N.D. Cal. 2020)). But Fogarty attested the account creation process has been "materially the same" since before any plaintiff created a MSA account.[6] *Id.*; *see also* Dkt. 7 ¶¶ 3–5 ("Since no later than October 2012, the Microsoft account creation process has been materially the same in requiring any prospective user to accept and agree to the hyperlinked MSA then in effect before he can create and use a Microsoft account."). Plaintiffs also suggest they may have created their Microsoft accounts by pressing "enter" on their keyboard instead of clicking with their mouse. Opp. at 19. But the notice provided during that signup process said "*[c]hoosing* **Next** means that you agree to the [MSA]," without differentiating between mouse and keyboard clicks, which are functionally the same. Dkt. 7 ¶ 3 (italics added). Given Microsoft's evidence, Plaintiffs' attempt to analogize the facts to *Snow* is not well founded. 2020 WL 6135990, *5 (explaining "the evidence Eventbrite offers does not demonstrate what versions of the sign-in wrap agreements the plaintiffs would have seen" and authenticates the provided images as merely "depict[ing]

---

[6] Plaintiffs created their Microsoft accounts before February 2024. Compl. ¶ 198. Yet they attempt to dispute the process to which Fogarty attested existed before February 2024 by submitting declarations vaguely attesting the flow has since changed. *E.g.*, Dkt. 50 ¶ 10; Dkt. 51 ¶ 10. The vague references to the current flow are irrelevant to their assent to the prior one.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

versions of the pages, not [as] depict[ing] the *only* versions of the pages"). Here, again, the Fogarty declaration establishes that the assent flow was materially the same at all relevant times.

Plaintiffs also do not dispute that Microsoft provided interrupt notices and emails to notify users of updated terms. Opp. 20–21. Instead, they only vaguely assert they have no recollection of seeing such emails or notices. *Id.*; *see, e.g.*, Dkt. 50 ¶¶ 16–17. They provide no evidence that they did not receive the interrupt notices or emails. *Ghazizadeh v. Coursera, Inc.*, 2024 WL 3455255, *13 (N.D. Cal. 2024) (holding defendant "met its burden to show that Plaintiff received notice of the updated terms" with no counter evidence that plaintiff "did not receive the email updates"). Plaintiffs' hypothesizing about what may have happened and bare assertions of I "do not recall" do not rebut Microsoft's evidence. *See Houtchens*, 649 F. Supp. 3d at 942; *Powell*, 2019 WL 1489149, *3.

As shown by the Fogarty declaration, Microsoft provided Plaintiffs with "reasonable notice" of the terms; whether Plaintiffs read the MSA's terms is irrelevant. *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, *7 (W.D. Wash. 2019); *see also Houtchens*, 649 F. Supp. 3d at 942 ("Plaintiffs' assertion that they may not have read the Terms of Service does not undermine their assent to the terms."). Microsoft's click-through presentation of the MSA is materially identical to that repeatedly upheld by the Ninth Circuit and this District as creating valid arbitration agreements.[7]

Further, because each Plaintiff had reasonable notice of the MSA when creating their Microsoft account, their continued account use means the current MSA version governs each of their individual claims. Each MSA in existence since October 2012 states that Microsoft "[f]rom time to time … may change or amend these terms" with notice and using "the services after the date the change becomes effective will be your consent to the changed terms. If you do not agree

---

[7] *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024); *J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454, *4 (granting motion to compel arbitration under MSA based on notice with "Next") (image available at Case No. 20-cv-0640, ECF No. 37, Ex. K); *Day v. Microsoft Corp.*, 2014 WL 243159, *1 (W.D. Wash. 2014) (granting motion to compel arbitration under MSA based on notice with "I Agree").



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

to the changes, you must stop using the services and cancel any paid services ….” September 2012 MSA (Dkt. 7-2) § 1.4, *see also* Dkt. 7-1 § 7 (materially identical); Dkt. 48 Ex. A. And the arbitration provision has had materially the same definition of "dispute" and a class-action waiver since 2012, the only material change being the elimination of the delegation clause. *Compare* September 2012 MSA § 10, *with* Dkt. 7-1 § 15 (delegating issues of arbitrability to court). Plaintiffs do not dispute that Microsoft provided notice of changes and only contest seeing the notice. Opp. at 20. Microsoft's undisputed evidence shows it sent notice emails concerning the September 2023 update with links to the terms and a summary of the updates. Dkt. 7 ¶ 7.1; Dkt. 7-3. Notice of updated terms—with a link to the new terms and/or summary of the updates—are sufficient to make the updates binding. *E.g.*, *Ghazizadeh*, 2024 WL 3455255, *12–13 (holding email sent to plaintiff with updated terms hyperlinked plus original agreement's "continuing use" provision and plaintiff's continued use manifested assent to updated terms) (collecting cases).

**2. Plaintiffs' Claims Fall Within the Broad Scope of the MSA.**

Plaintiffs argue their claims fall outside the scope of the MSA because Edge is not a "Covered Service" and their Microsoft accounts have no bearing on the controversy. Their position ignores the broad scope of the MSA and the plain allegations of their Complaint.

Under the MSA, the parties agreed to settle any "dispute" by binding individual arbitration.[8] "Dispute" is defined "as broad as it can be" to cover "any claim or controversy … concerning the Services, the software related to the Services, … your Microsoft account, … or these Terms" under the MSA, among other things. *Id.* To overcome this "broad" arbitration language, plaintiffs must come forward with "forceful evidence of a purpose to exclude the claim from arbitration." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Put another way, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

[8] September 2016 MSA § 15(a); September 2023 MSA § 15(a). While Microsoft focuses on the MSAs explicitly accepted by the various Plaintiffs, the result is the same under any version of the MSA because the definition of "dispute" has not materially changed.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

interpretation that covers the asserted dispute." *Id.*; *see also Zamudio v. Aerotek, Inc.*, 2024 WL 2055146, *2–3 (E.D. Cal. 2024) (recognizing "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" and holding claims fell within "broad scope of the arbitration agreement").

Plaintiffs' claims concern Microsoft's alleged collection of data while they browse in Edge and search in Bing, and the alleged association of their browsing and search data to their Microsoft accounts. Compl. ¶¶ 9–24. The allegations concerning their Microsoft accounts—and being logged in while browsing and searching—are key to Plaintiffs' claims because they allege "the data collected can be associated with their names … [only] when the user is logged into a Microsoft account." *Saeedy*, 2023 WL 8828852, *5 n.6; *see also* Compl. ¶¶ 47, 60, 79; Dkt. 42 at 15 ("Plaintiffs now allege [that] (they were logged in to their Microsoft accounts, (2) while using Edge to access specific types of private financial, medical, and other information, (3) and experienced targeted advertising based on those activities and searches ….").

Contrary to Plaintiffs' assertions otherwise, they do not allege that Microsoft connects collected data with users "regardless of whether a user is logged into a Microsoft account when using Edge." Opp. at 23 (citing Compl. ¶¶ 34–45). Indeed, Plaintiffs once again allege that Microsoft collects and processes certain identifiers into a data packet only when a user opens an "Edge Browser and is either already logged in to his Microsoft Account or logs in to his Microsoft Account." Compl. ¶¶ 47, 60, 79. Plaintiffs' selective citation to their Complaint does not rewrite the factual assertions they have made that Microsoft only associates collected data with users' names when users are logged into a Microsoft account. Their Microsoft accounts, rather than any issue with Edge generally, are thus central to Plaintiffs' claims—bringing their claims squarely within the scope of the MSA's arbitration provision. Plaintiffs do *not* dispute that any claims concerning Microsoft accounts are subject to arbitration.

Plaintiffs assert that because Edge is not a "Covered Service" within the MSA, the MSA cannot apply. Opp. at 22 (citing *U.S. ex. rel. Welch v. My Left Foot Childs. Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017); *Ramos v. Super. Ct.*, 28 Cal. App. 5th 1042, 1052 (2018); *Jackson v.*



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Amazon*, 65 F.4th 1093, 1101 (9th Cir. 2023)). But Plaintiffs' claims do not rest on their "use of Edge" alone. *Id.* Rather, Plaintiffs' claims rely on the allegation that they were browsing in Edge and searching in Bing while logged into their Microsoft accounts, implicating the MSA and the Microsoft's Privacy Statement. The MSA governs their Microsoft accounts and incorporates the Privacy Statement in the first paragraph. *See* Dkt. 7-1 § 15. For these reasons, Plaintiffs' reliance on *Welch* and *Jackson* is inapt as both those cases involved claims that bore no relation to the parties' contract. *Welch*, 871 F.3d 797–98 (concluding more-specific "Agreement" section, which limited each provision containing an agreement to arbitrate to disputes related to plaintiff's "employment or association with" defendant, governed general "Included Claims" section); *Jackson*, 65 F.4th at 1102–03 ("the allegations underlying [plaintiff's] claims involve employer misconduct wholly unrelated to the parties' agreement .. [and] therefore does not touch on any matters related to the contract that would fall within the arbitration clause"). Instead, *Ramos* counsels that because "the factual allegations of the complaint "… 'touch matters' covered by the contract containing the arbitration clause," Plaintiffs' claims come within its scope. 28 Cal. App. 5th at 1052. In *Ramos*, the court held that because claims regarding plaintiff's salary reduction and denial of opportunities as an income partner "appear[] to 'touch matters' covered by the Partnership Agreement" and "have their 'roots in the relationship' created by the Partnership Agreement, [plaintiff's] claims are subject to arbitration." *Id.* at 1053. Here, Plaintiffs' claims touch, and are rooted in, their use of Microsoft accounts and Bing as well as Microsoft's data-collection practices when users are browsing in Edge and searching in Bing while logged into their Microsoft accounts, all of which is squarely governed by the MSA.

Plaintiffs' arguments concerning Bing and the Privacy Statement also ring hollow. Plaintiffs make many allegations concerning data allegedly collected by or sent to Bing, which "served as the default search engine" for two of them. *E.g.*, Compl. ¶¶ 9–24, 41, 49–51, 94–95. And they admit the "Terms" of the MSA include Microsoft's Privacy Statement: "[B]y agreeing to these Terms, you consent to Microsoft's collection, use and disclosure of Your Content and Data as described in the Privacy Statement." Opp. at 24. This statement brings the "collection,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

use and disclosure" of data within the scope of the MSA and, thus, its individual arbitration agreement. Plaintiffs provide no substantive argument to the contrary. Instead, they make a fuss about the timing of the Privacy Statement and claim it is also incorporated into the end-user licensing agreement for Edge. But Plaintiffs admit the Privacy Statement existed before they began using Edge (and so at all times relevant to their claims), and the Edge EULA is not exclusive—indeed, the fact it also incorporates the Privacy Statement shows the MSA and Edge EULA are co-extensive. *See* Opp. at 1 (Plaintiffs did not begin using Edge until 2020 and 2021), 7 ("Microsoft's Privacy Statement … was introduced sometime in or after July 2015"). These touch points to Plaintiffs' data-collection-based allegations and the Privacy Statement suffice to compel arbitration. *E.g.*, *McMahon v. Meta Platforms, Inc.*, 2023 WL 4546377, *3 (W.D. Wash. 2023) (compelling arbitration of claims tied to a Twitter comment made because "plaintiff was using Facebook for commercial purposes" under provision requiring arbitration of claims "'that arises out of or relates to any access or use of' Facebook for commercial purposes"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 722 (9th Cir. 1999) (compelling arbitration of antitrust claims because they necessitate interpreting agreement containing arbitration clause); *Hernandez v. Experian Info. Sols., Inc.*, 2022 WL 17098188, *4 (C.D. Cal. 2022) (enforcing arbitration agreement covering claims "that rise from or relate to the loan" when plaintiff sued to enforce settlement agreement "to be released from debt that he incurred pursuant to the loan").

Plaintiffs also argue that whether the MSA governs their claims is ambiguous and the Court should construe ambiguity in their favor. Opp. at 27–28. The only case Plaintiffs cite is inapplicable because it involved ambiguities in *contractual terms* rather than *the application* of an arbitration provision. *Id*. at 25 (citing *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 246 (2016) (determining to whom the arbitration provisions provided authority to determine the availability of class arbitration)). In fact, the Court should resolve any potential "ambiguity" as to the *scope* of the MSA's arbitration provision in favor of arbitration. 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Johnson*, 57 F. 4th at 680 (same);



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 456 (2002) (same). Here, there is only one reasonable interpretation after reading the MSA as a whole: any claims concerning Microsoft accounts, Bing, and data collection are arbitrable. Because Plaintiffs' claims concern alleged data collection when browsing Edge and searching on Bing while logged into their Microsoft accounts, they fall squarely within the MSA, and Plaintiffs must individually arbitrate them. And if there *were* any "doubts concerning the scope of an arbitration clause," which there are not, such doubts "should be resolved in favor of arbitration." *Johnson*, 57 4th at 680.

**D. Plaintiffs Fail to Establish the MSA Is Unenforceable.**

Plaintiffs argue the MSA is unconscionable in part because they say it violates *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).[9] Opp. at 26–29. "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). Plaintiffs fail to meet their burden on unconscionability. Under California law, both procedural and substantive unconscionability must be present for a contract to be held unconscionable. *Houtchens*, 649 F. Supp. 3d at 943. Under Washington law, either is sufficient. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54 (2020). Plaintiffs proved neither.

**1. The MSA Is Not Procedurally Unconscionable.**

Procedural unconscionability examines "the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression

[9] M.C.'s father also claims M.C. "disaffirm[ed]' any terms and conditions purportedly related to the use of Edge … and has completely ceased using Edge on his Toshiba Satellite laptop." Opp. at 18 n.14. But other than his father's say-so, which is inadmissible hearsay, *supra* n.5, M.C. has not met his burden to establish disaffirmance. Moreover, to disaffirm, M.C. must "restore to the other party all money and other property received by him by virtue of the contract and remaining within his control" and "cannot continue to benefit from the contract after disaffirming the contract." *G.G. v. Valve Corp.*, 2017 WL 1210220, *3 (W.D. Wash. 2017), *vacated in part on other grounds*, 799 F. App'x 557 (9th Cir. 2020). Even if the Court were to consider the declaration, there is still no evidence that M.C. has discontinued using Edge on his Chrome laptop, using his Microsoft account, or any of the other "Covered Services" governed by the MSA. Dkt. 49 ¶¶ 12–14. M.C. cannot continue to receive benefits under the MSA while ignoring its other terms requiring individual arbitration.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

and surprise involved in the agreement." *Houtchens*, 649 F. Supp. 3d at 943–44 (citation omitted); *see also Burnett*, 196 Wn.2d at 54 (similar). Plaintiffs argue the MSA is procedurally unconscionable as an adhesion contract that takes nearly an hour to read with a "buried" arbitration clause. Opp. at 26–27. Both arguments fail.

*First*, the fact that the MSA's terms were not negotiable does not render the arbitration agreement unconscionable. The mere adhesive nature of a consumer contract does not make it unconscionable, for "the times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011); *see also Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1015 (9th Cir. 2023) (enforcing delegation provision in contract of adhesion). "The key inquiry is whether the party lacked meaningful choice." *Burnett*, 196 Wn.2d at 55. Plaintiffs do not dispute they had a meaningful choice whether to enter the MSA. They were provided clear notice of the arbitration agreement, which was conveniently hyperlinked for them to access directly upon opening the MSA, and which was highlighted at the beginning of the MSA in bold and capitalized letters: the MSA "**CONTAINS A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER**" that "**AFFECTS YOUR RIGHTS ABOUT HOW TO RESOLVE ANY DISPUTE WITH MICROSOFT**" or that "**AFFECTS HOW DISPUTES ARE RESOLVED**." Mot. at 5. They could have simply used Microsoft services *without* opening an optional Microsoft account. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1027–28 (N.D. Cal. 2020) (no procedural unconscionability where "consumers have 'reasonably available alternative sources of supply'"); *Pokrass v. The DirecTV Grp., Inc.*, 2008 WL 2897084, *6 (C.D. Cal. 2008) (same for nonessential activities where "consumer always has the option of simply foregoing the activity").

Plaintiffs rely on cases involving inapposite circumstances. *Burnett* involved a contract that "did not mention arbitration"; rather, plaintiff only received the arbitration policy in a handbook—which did not identify it on the table of contents—*after signing the contract*. 196 Wn.2d at 56–57. Here, Plaintiffs admit they received the hyperlinked MSA, which contained a clear disclosure of the arbitration clause, while signing up for their Microsoft accounts. Opp. at



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

19. In *Ting v. AT&T*, defendant mailed the contract "in an envelope that few customers realized contained a contract[.]" 319 F.3d 1126, 1149 (9th Cir. 2003). There is no such evidence here. And courts in this District have repeatedly held that this very Microsoft account-creation process results in an enforceable arbitration agreement. *Supra* n.7.

**2. The MSA Is Not Substantively Unconscionable.**

Plaintiffs' claims the MSA is substantively unconscionable because of (1) the "arbitration provision's ban on public injunctive relief," (2) Microsoft's ability to modify its terms, and (3) the limitation of liability provision. Opp. at 27–28. Plaintiffs' arguments fail.

*First*, the California Supreme Court's holding in *McGill* regarding contractual waivers of a right to seek "public injunctive relief" in all fora is inapplicable in this case. *See* 2 Cal. 5th at 963. As an initial matter, Plaintiffs do not seek public injunctive relief. Public injunctive relief is "limited to forward-looking injunctions that seek to prevent future violations of law *for the benefit of the general public as a whole*, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (emphasis added). Here, Plaintiffs seek relief on behalf of particular classes of persons (i.e., a limited group of Edge users)—not the general public. Compl. ¶¶ 198–99. This constitutes private injunctive relief. *Hodges*, 21 F.4th at 543 ("[W]hen the injunctive relief being sought is for the benefit of a discrete class of persons, or would require consideration of the private rights and obligations of individual non-parties, it has been held to be private injunctive relief."); *see also Grigorian v. Citibank, N.A.*, 2024 WL 2106944, *3 (C.D. Cal. 2024) (finding plaintiff's requested relief on behalf of bank customers of Armenian descent constitutes private injunctive relief); *Torres v. Veros Credit LLC*, 2023 WL 5505887, *5 (C.D. Cal. 2023) (finding plaintiff's requested relief to prevent another data breach constitutes private injunctive relief because it would only benefit a particular class of persons—defendants' customers).

Even if Plaintiffs were seeking public injunctive relief, the arbitration agreement is consistent with *McGill*. Under the MSA, the arbitrator decides liability and if the arbitrator finds



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

liability, the parties return to the court to rule on the requested relief—i.e., the "public injunction remedy." *E.g.*, Dkt. 7-1 § 15 ("[T]he parties agree to arbitrate all claims and remedies subject to arbitration before litigating in court any remaining claims or remedies (such as a request for a public injunction remedy, in which case the arbitrator issues an award on liability and individual relief before a court considers that request)."). Courts approve the approach to public injunctive relief set forth in the MSA. *See, e.g., Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("Plaintiffs may return to the district court to seek their public injunctive relief" after arbitration); *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019) (parties are "welcome to agree to split decision-making between a court and an arbitrator" so that the court fashions the remedy, if needed); *Nguyen v. Tesla, Inc.*, 2020 WL 2114937, *5 (C.D. Cal. 2020) (compelling arbitration of individual claims and staying action pursuant to arbitration clause containing a public injunctive relief severance clause); *Allen*, 2021 WL 1723454, *9 ("[I]f the arbitrator finds the issue of public injunctive relief cannot be arbitrated and finds Microsoft liable under California law, the case would return to this Court for a determination as to public injunctive relief"); *see also Fama v. Opportunity Fin. LLC*, 2023 WL 9954028, *9 (W.D. Wash. 2023); *Dornaus v. Best Buy Co.*, 2019 WL 632957, *6 (N.D. Cal. 2019).

*Second*, Microsoft's ability to unilaterally modify the MSA does not render it unconscionable. "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) (enforcing arbitration clause). The clause is also severable, which further bolsters the enforceability of the MSA. *See* Dkt. 7-1 § 15(g); *Ramirez v. Charter Commc'ns, Inc.*, 2024 WL 3405593, *19 (Cal. 2024) (explaining severance clause is "an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced"); *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 360 (2004) (ordering severance of two unconscionable provisions as it would not "disturb[] the primary intent of the parties to arbitrate their disputes"). In any event, Plaintiffs identify no changes to the MSA that they find objectionable.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Third*, Plaintiffs' challenge to the limitation of liability clause is a dispute with the terms of the MSA—not a defense to its enforcement—making it an issue solely for the arbitrator to decide. *See* Dkt. 7-1 § 15. Even if that were not the case, limitations of liability are enforceable. *E.g.*, *Chauvlier v. Booth Creek Ski Holdings, Inc.*, 109 Wn. App. 334, 339 (2001) ("exculpatory agreements are generally enforceable, subject to three [inapplicable] exceptions"); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) ("Limitation of liability clauses 'have long been recognized as valid in California.'").

## III. CONCLUSION

Microsoft respectfully requests that the Court compel Plaintiffs to arbitrate their claims on an individual basis and stay the case pending resolution of those individual arbitrations.[10]

DATED this 19th day of July, 2024

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Microsoft Corporation*

By: *s/ Fred B. Burnside*
Stephen M. Rummage, WSBA #11168
Fred B. Burnside, WSBA #32491
Jaime Drozd, WSBA #35742
Xiang Li, WSBA #52306
Caleah Whitten, WSBA #60209
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
steverummage@dwt.com
fredburnside@dwt.com
jaimedrozd@dwt.com
xiangli@dwt.com
caleahwhitten@dwt.com

James Moon, *pro hac vice*
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: jamesmoon@dwt.com

[10] Plaintiffs do not dispute that the Court must stay the action pending arbitration if the Court compels arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (when a lawsuit "involves an arbitrable dispute … § 3 of the FAA compels the court to stay the proceeding").

*I certify that this memorandum contains 6,669 words, in compliance with the Court's order, Dkt. 45.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax