UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NOAH SAEEDY, VISHAL SHAH, TINA WILKINSON, and M.C., a minor, by and through his natural parent and legal guardian, MOSES CHATMANN II, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

MICROSOFT CORPORATION, a Washington Corporation,

Defendant.

NO. 2:24-cv-00219 SKV

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT MICROSOFT'S MOTION TO COMPEL ARBITRATION AND STAY THE CASE**

**THE HONORABLE S. KATE VAUGHAN**

### A. Microsoft Failed to Meet Its Burden to Establish That Plaintiffs' Entry of Their Password During their Account Creation Constitutes an Unambiguous Manifestation of Assent to the MSA.

"[A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 856 (9th Cir. 2022). "Because 'online providers have complete control over the design of their websites . . . the onus must be on website owners to put users on notice of the terms to which



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001
www.summitlaw.com

they wish to bind consumers[.]'" *Id.* at 857 (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 465 (2021)). "While [i]nternet commerce has exposed courts to many new situations, it has not fundamentally changed the requirement that [m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Sellers*, 73 Cal. App. 5th at 460 (internal citations omitted). To be binding, parties must "manifest to each other their mutual assent *to the same bargain at the same time*." *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 491 (Wash. 2020) (emphasis added).

Microsoft cannot establish that Plaintiffs' act of inputting their password and pressing the "enter" key constitutes an unambiguous manifestation of their assent to the MSA,[1] especially where Microsoft had specifically instructed users to "choose" the button "Next" instead. In *Sellers,* the California Court of Appeal had also expressed doubts as to whether consumers understand that they would be "bound [to a contract] by clicking some other button [as opposed to 'I Agree']" when they sign up for their accounts, because in these circumstances their purported assent "is 'largely passive,'" and the existence of a contract turns on "whether a reasonably prudent offeree would be on inquiry notice of the terms at issue." *Sellers*, 73 Cal. App. 5th at 471; *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (automatic assent "was 'too passive for any reasonable factfinder to conclude that [the consumer] manifested a subjective understanding of the existence of the arbitration and other emailed provisions and an intent to be bound by them in

[1] Under California law, "a valid contract requires the mutual consent of the parties, which is generally achieved through the process of offer and acceptance." *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *3 (N.D. Cal. Oct. 19, 2020) (internal citations omitted). Washington courts similarly consider "[t]he role of the court is to determine the mutual intentions of the parties according to the reasonable meaning of their words and acts." *Fisher Props. Inc. v. Arden-Mayfair, Inc.*, 726 P.2d 8, 15 (Wash. 1986).



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001
www.summitlaw.com

exchange for the continued benefits [the business] offered.'").[2] Agreeing with *Sellers,* the Ninth Circuit in *Berman* held that a "user's click of a button can be construed as an unambiguous manifestation of assent *only if* the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857 (emphasis added). Microsoft did not advise users that inputting their passwords and pressing "enter," or mere account creation, would constitute assent to their MSA. Rather, users reasonably understood that pressing "Enter" simply recorded their password credentials for their account.

Here, in under a minute an individual can create a Microsoft account. The user is first presented with a screen asking the user to input her email address. Dkt. 50, Saeedy Decl., ¶ 11; Dkt. 51, Shah Decl., ¶ 11; Dkt. 52, Wilkinson Decl., ¶ 11. No terms are depicted on the screen. Dkt. 7, Fogarty Decl., ¶ 3; Dkt. 48, Hart Decl., ¶ 11. After a user inputs their email, they are asked to input a password. After inputting the password and pressing "enter" to submit the password, the user is **immediately** taken to another screen – bypassing the inconspicuously shown references to the MSA terms on the prior screen, which are in much smaller font and located underneath a box which can be checked to sign up for "information, tips, and offers about Microsoft products and services." Hart Decl., ¶¶ 7–8. Moreover, some users' presented view of *any* set of terms is obstructed by an automated password suggestion pop-up that conceals the hyperlinks to the MSA and Privacy Statement. Hart Decl., ¶ 7. The users do not see any references to the MSA anywhere else, as they create their account and provide other information.

---

[2] *See also Shuman v. Squaretrade Inc.*, 2020 U.S. Dist. LEXIS 261594, at *36 (N.D. Cal. Aug. 31, 2020) ("silence does not constitute acceptance of an offer") (citing *Leslie v. Brown Bros. Inc.*, 208 Cal. 606, 621 (1929)); *see also Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017) (the general rule is that silence does not constitute acceptance of an offer).



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001
www.summitlaw.com

By providing Microsoft with their selected passwords, the users do not express their assent to any binding terms and conditions; instead, they simply provide a password, in the same way that they provide their email or other information during the account creation process. Because they are immediately taken from one screen to another, they do not see any disclosures or references to the MSA. Without an affirmative click on the "Next" button, or at the very least, a conspicuous disclosure that by providing Microsoft with a password or by creating an account, users automatically manifest their assent to the terms, the Court should not find that Plaintiffs assented to the MSA. *See Berman,* 30 F.4 at 856 (holding that for valid assent, the consumer must take affirmative action "such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (cleaned up) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."); *see also Saint Agnes Med. Center v. PacifiCare of California*, 31 Cal. 4th 1187, 1200 (2003) ("If a party can show that it did not know it was signing a contract, or that it did not enter into a contract at all, both the contract and its arbitration clause are void for lack of mutual assent.").

Microsoft presumes that the use of a mouse to click the "Next" button and the act of pressing the enter key on one's keyboard are the same.[3] Yet Microsoft is not entitled to such a presumption as users do not equate the two and because "not all internet users are alike, 'the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.'" *Berman*, 30 F.4th at 67 (internal citation omitted). As explained by the Ninth Circuit in *Berman*, it is not reasonable to assume that "most consumers know that clicking that 'some other button' constitutes

[3] It also argues that most websites engage in this practice, which is wholly irrelevant. Besides, Microsoft begins collecting data before any user even gets to a website.



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001
www.summitlaw.com

agreeing to contract terms." *Id.* at 866. Unless a user has been presented with an unambiguous "layout and language of the site giv[ing] the user reasonable notice that a [specific] click will manifest assent to an agreement," they cannot be found to have unambiguously manifested assent to be bound by a contract. *Id.* This rationale also comports with the Washington Supreme Court's reasoning in *Burnett* wherein the court found that for an arbitration agreement to be binding, "[i]t must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms" at the time the contract was purportedly signed. *Burnett,* P.2d at 492.

Thus, while Microsoft could have easily required users to check a specific box to accept its MSA (as many other providers do), or at least advised them in a clear and conspicuous manner that their account creation would result in acceptance of terms, it did not do so. Instead, it stated that by "choosing **Next**" (i.e. the blue button "Next") consumers would be agreeing to the terms; yet none of the Plaintiffs selected the button "Next" nor saw the references to the MSA.

### B. Plaintiffs' Claims for Public Injunctive Relief are Distinguishable from those at Issue in *Hodges*.

Plaintiffs seek public injunctive relief, which Microsoft disputes. In *Hodges,* the Ninth Circuit held that injunctive relief benefitting only "Comcast cable subscribers" rather than the public at large constituted private, rather than public, injunctive relief. *Hodges v. Comcast Cable Communs., LLC*, 21 F.4th 535 (9th Cir. 2021) Here, however, under the California and federal wiretapping claims ("ECPA," 18 U.S.C. § 2510 *et seq.* and "CIPA," Cal. Pen. Code § 631 *et seq.*) Plaintiffs seek to enjoin Microsoft from intercepting, collecting, and using any portion of *any* users' private data. *See* Dkt. 1-1, ¶¶ 222, 230, 242, 245, 270, 283, 305. Thus, unlike the *private* relief in *Hodges,* here the requested injunction would benefit the public—including students *at public schools*, not just a discrete group of people, like Comcast cable subscribers. *Cf. Hodges*, 21 F.4th 535 (discussing a "hypothetical" relief sought by plaintiffs that would only benefit a discrete group of people as opposed to the public as a whole). Thus, the relief here aligns with the Ninth Circuit's



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001
www.summitlaw.com

"paradigmatic example" of the public injunctive relief in *Hodges*, "where a plaintiff seeks an injunction against the use of false advertising to promote a credit protection plan," with the primary effect being the prevention of unlawful acts that pose a threat of future harm to the public. *See id*. at 542–544 (contrasting the public relief sought in *McGill* under the UCL to the "private" relief in *Clifford v. Quest Software Inc*., 38 Cal. App. 5th 745 (2019), which was to benefit current employees only). Plaintiffs' complaint alleges that hundreds of millions of people use the Edge browser, and the use of Edge does not require a subscription or a Microsoft account. Quite simply, Edge is usable by any member of the public. Microsoft's surreptitious interception, collection, and use of users' private data therefore impacts the general public. Dkt. 1-1, ¶ 32 (highlighting Edge's ownership of the "third-largest market share of all internet browsers across desktops and all platforms."). Like the effect of an injunction to stop false advertising, the effect of an injunction against the unauthorized interception and misuse of private data while using the Microsoft Edge browser would safeguard the public at large benefiting both account holders and the general public (users of the Microsoft Edge browser) from the ongoing and future injury of misuse of their private information.

Courts often distinguish *Hodges*, as this Court should. For example, in *Cal. Crane Sch., Inc. v. Google LLC*, 2024 U.S. Dist. LEXIS 50659, at *15–16 (N.D. Cal. Mar. 21, 2024), the court distinguished *Hodges* by holding that "[u]nlike the class-specific relief sought in *Hodges*, the relief here would provide diffuse benefits to the public by potentially bolstering competition in the search and search advertising markets, increasing consumer choice, improving data privacy, and decreasing costs for both general search engine users and digital advertisers like CCS." *Id*. at *15; *see also MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1038 (N.D. Cal. 2022) (finding an injunction enjoining Verizon from falsely advertising the prices of its wireless plans to members of the public was properly categorized as a request for public injunctive relief not limited to only the universe of customers who have specific contracts with Verizon); *Blair v. Rent-A- Ctr., Inc.*, 2017 U.S. Dist. LEXIS 163979, at *10 (N.D. Cal. Oct. 3, 2017) (holding that plaintiffs' injunction under the Consumer Legal Remedies Act, California Unfair Competition Law, and Karnette Rental-Purchase



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001
www.summitlaw.com

were "public" in nature; while an injunction under a usury claim was not because it would only benefit the current borrowers and is "personal, and is available only to the debtor or his personal representative"). Like in *Blair, Cal. Crane Sch.*, and *MacClelland*, this Court should similarly find that Plaintiffs' allegations concerning a product as ubiquitous as Edge seek "relief that would benefit the general public as a whole rather than provid[e] benefits to only a specific and identifiable subset of the population." *Cal. Crane Sch.*, 2024 U.S. Dist. LEXIS 50659, at *15. Therefore, Plaintiffs' claims for public injunctive relief are distinguishable from *Hodges* and render the MSA unenforceable.

### C. Should the Court Compel Arbitration for Plaintiffs with a Microsoft Account, M.C.'s Claims Should Proceed in this Forum

Because Plaintiff M.C. never created a Microsoft account for himself,[4] the MSA and its arbitration provision do not apply to him. There is no question that M.C. did not agree to arbitrate his claims, and he cannot be compelled to do so simply because other Plaintiffs here may have to. If the Court determines that Plaintiffs Saeedy, Shah, and Wilkinson must arbitrate their claims, M.C. should be allowed to proceed with his claims, as class representative, in this Court.

DATED this 11th day of October, 2024.

SUMMIT LAW GROUP, PLLC
I certify that this memorandum is 9 pages in total length, in compliance with the Hon. S. Kate Vaughan's Minute Order at Dkt 58

*s/ Rebecca Singleton*

Alexander A. Baehr, WSBA No. 25320
Molly Gibbons, WSBA No. 58357
Rebecca Singleton, WSBA No. 57719
315 Fifth Avenue S., Suite 1000
Seattle, WA 98104
Telephone: (206) 676-7000
Email: alexb@summitlaw.com
mollyg@summitlaw.com
rebeccas@summitlaw.com

[4] After it became known that M.C. did not create a Microsoft account for himself, Plaintiffs amended the state court complaint to reflect that development and will move to amend the federal court complaint to reflect the same if arbitration is not compelled.

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, PC

Marc E. Masters
Barr Benyamin
1875 Century Park East, 23rd Floor
Los Angeles, California 90067
Telephone: (310) 201-2100
Email: ***mmasters@birdmarella.com***
***bbenyamin@birdmarella.com***

GLANCY PRONGAY & MURRAY, LLP

Jonathan Rotter
Raymond D. Sulentic
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: ***jrotter@glancylaw.com***
***rsulentic@glancylaw.com***

CLARKSON LAW FIRM, P.C.

Glenn A. Danas
Yana Hart
Katelyn M. Leeviraphan
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070
Email: ***gdanas@clarksonlawfirm.com***
***yhart@clarksonlawfirm.com***
***kleeviraphan@clarksonlawfirm.com***

***Attorneys for Plaintiffs and the Putative Classes and Subclasses***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2024 I electronically filed the foregoing with the Clerk of the USDC, Western District of Washington, using the CM/ECF system which will send notification of such filing to the following:

DAVIS WRIGHT TREMAINE, LLP

Fred B. Burnside, WSBA No. 32491
*fredburnside@dwt.com*
Stephen M. Rummage, WSBA 11168
*steverummage@dwt.com*
Jaime Drozd, WSBA No. 35742
*jaimedrozd@dwt.com*
Xiang Li, WSBA No. 52306
*xiangli@dwt.com*
Caleah N. Whitten, WSBA No. 60209
*caleahwhitten@dwt.com*
James Moon, pro hac vice
*jamesmoon@dwt.com*

***Attorneys for Defendant Microsoft Corporation***

DATED this 11th day of October, 2024.

SUMMIT LAW GROUP, PLLC

*s/ Lisa Britton*
**Lisa Britton,** Legal Assistant
*lisab@summitlaw.com*



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001
www.summitlaw.com