The Honorable S. Kate Vaughan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOAH SAEEDY, VISHAL SHAH, TINA WILKINSON, and M.C., a minor, by and through his natural parent and legal guardian, Moses Chatmann III, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>Defendant. | No. 2:24-cv-00219-SKV<br><br>**MICROSOFT'S SUPPLEMENTAL BRIEF RE MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>**NOTE ON MOTION CALENDAR: OCTOBER 18, 2024** |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS

**Page**


A. Plaintiffs Entered a Valid Agreement to Arbitrate. .......... 2

1. Microsoft Provided Sufficiently Conspicuous Notice of the MSA. .......... 3

2. Plaintiffs Unambiguously Manifested Their Assent. .......... 6

3. Plaintiffs Again Assented to the MSA After Creating Their Accounts. .......... 8

B. The Court Should Compel M.C. to Arbitrate. .......... 9




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) ....................2, 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................6

*Atencio v. TuneCore, Inc.*,
843 F. App'x 42 (9th Cir. 2021) ....................9

*Bennett v. T-Mobile USA, Inc.*,
2024 WL 229580 (W.D. Wash. 2024)....................8

*Chen v. Sierra Trading Post, Inc.*,
2019 WL 3564659 (W.D. Wash. 2019)....................3, 7

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ....................1, 7, 8

*Day v. Microsoft Corp.*,
2014 WL 243159 (W.D. Wash. 2014)....................1, 2, 7

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....................6

*FTC v. LendingClub Corp.*,
2018 WL 11436309 (N.D. Cal. 2018) ....................5

*G.G. v. Valve Corp.*,
2017 WL 1210220 (W.D. Wash. 2017), *vacated in part on other grounds*,
799 F. App'x 557 (9th Cir. 2020) ....................10

*Heinz v. Amazon.com Inc.*,
2024 WL 2091108 (W.D. Wash. 2024)....................5

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ....................7

*J.A. v. Microsoft Corp.*,
2021 WL 1723454 (W.D. Wash. 2021)....................7

*Juul Labs, Inc. Antitrust Litig., In re*,
555 F. Supp. 3d 932 (N.D. Cal. 2021) ....................4, 6



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................2, 3, 5, 7

*Maher v. Microsoft Corp.*,
2018 WL 1535043 (N.D. Ill. 2018) ....................7

*Mendoza v. Microsoft Inc.*,
2014 WL 4540225 (W.D. Wash. 2014) ....................1, 2, 7

*Needleman v. Golden 1 Credit Union*,
474 F. Supp. 3d 1097 (N.D. Cal. 2020) ....................2, 3

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .................... *passim*

*Ohkubo v. Antara Biosciences, Inc.*,
364 F. App'x 340 (9th Cir. 2010) ....................10

*Powell v. United Rentals (N. Am.), Inc.*,
2019 WL 1489149 (W.D. Wash. 2019) ....................7

*PTP OneClick, LLC v. Avalara, Inc.*,
2020 WL 4729174 (W.D. Wash. 2020) ....................10

*Rendon v. T-Mobile USA, Inc.*,
2024 WL 4284661 (C.D. Cal. 2024) ....................8

*Robbins v. Mscripts, LLC*,
2023 WL 5723220 (N.D. Cal. 2023) ....................4

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011) ....................10

*Romanov v. Microsoft Corp.*,
2021 WL 3486938 (D.N.J. 2021) ....................7

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. 2023) ....................8

*Thorne v. Square, Inc.*,
2022 WL 542383 (E.D.N.Y. 2022) ....................7

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
995 F. Supp. 1060 (D. Ariz. 1997) ....................10

*Walsh v. Microsoft Corp.*,
2014 WL 4168479 (W.D. Wash. 2014) ....................1, 2, 7



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Walters v. Chase Manhattan Bank*,
2008 WL 3200739 (E.D. Wash. 2008) ........................................................................8

*Yuksel v. Twitter, Inc.*,
2022 WL 16748612 (N.D. Cal. 2022) ........................................................................5

**State Cases**

*Smith v. Johnson*,
118 Wn. App. 1029, 2003 WL 22054222..................................................................10

**State Statutes**

RCW 26.28.030 ..........................................................................................................10

**Rules**

Fed. R. Evid. 802 .......................................................................................................10



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Under settled law, the Court "must order the parties to proceed to arbitration" if (1) "a valid agreement to arbitrate exists" and (2) "the agreement encompasses the dispute at issue." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 509–10 (9th Cir. 2023). Microsoft proved both.

As to assent, Microsoft's evidence shows that its account-creation process presents users with notice that proceeding to create an account requires first accepting the MSA. Dkt. 56-1 ("Mot.") at 10–13. That process gives users a reasonable opportunity to review the MSA terms, including the arbitration agreement, before deciding whether they want to accept the terms to proceed with account creation. *Id.* Numerous courts have enforced Microsoft's arbitration agreement in these circumstances—even where Microsoft relied on a description of the account-creation process instead of the exact screenshot that would have been presented to plaintiffs. *See Walsh v. Microsoft Corp.*, 2014 WL 4168479, *3 (W.D. Wash. 2014) (Pechman, J.) (plaintiff assented to Microsoft terms as proved by declarations describing the clickthrough process users must go through, without screenshots, ECF 44); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, *3 (W.D. Wash. 2014) (Pechman, J.) (same, ECF 45); *accord Day v. Microsoft Corp.*, 2014 WL 243159, *2 (W.D. Wash. 2014) (Martinez, J.) (same, exemplar screenshot ECF 19). From an evidentiary standpoint, "no original of the screenshots [at account creation] is required." *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989–90 (N.D. Cal. 2017). These holdings make sense, as the standard for contract formation is an objective one—what matters is not whether Plaintiffs remember *actually* seeing the screens or reviewing the terms, or remember clicking a mouse or using a keyboard, but whether their actions objectively manifested their assent. They did.

As to scope, Plaintiffs' claims all hinge on Edge-browsing data they allege is associated to them because they were logged into their Microsoft accounts while browsing on Edge. These claims plainly fall within the broad scope of the arbitration agreement. Mot. 14–15.

This supplemental brief addresses: (1) the evidence proving assent to agreements presented online; and (2) the next steps for M.C., who tried to disclaim the allegations in his operative complaint that he was logged into a Microsoft account while browsing on Edge. While Microsoft believes it met its evidentiary burden in its original briefing, *see* Mot. 2 n.2, 12 nn.11-



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

12 (collecting cases, e.g., *Walsh*, *Mendoza*, *Day*), at the Court's request it is providing additional evidence in the form of screenshots of what the account-creation screens looked like in 2013, 2015, and 2016—which all conform with the Fogarty declaration.

As to the Court's questions on M.C.'s father's sham declaration about M.C.'s alleged lack of a Microsoft account, the operative Complaint still says M.C. was "almost always logged into his Microsoft account." Dkt. 1-1 ("Compl.") ¶ 23. This is a "judicial admission conclusively binding on the party who made them" that M.C.'s father's hearsay statements do not supersede. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Therefore, the Court should credit the judicial admission, as controlling caselaw requires, and disregard the contrary third-party declaration.

**A. Plaintiffs Entered a Valid Agreement to Arbitrate.**

Plaintiffs agree the touchstone for proving mutual assent is "whether the consumer had reasonable notice of a merchant's terms of service agreement," which Microsoft may establish through constructive notice of the agreement. *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1103 (N.D. Cal. 2020), cited by Dkt. 47 ("Opp.") at 17. Constructive notice exists where (1) the terms of the agreement are reasonably conspicuous and (2) users must take an affirmative action demonstrating assent. *Oberstein*, 60 F.4th at 509–10. Microsoft need only show the existence of an arbitration agreement "by a preponderance of the evidence." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024). Consistent with these principles, courts do not require pictures of the actual screenshots shown to the plaintiff to find an enforceable agreement where, as here, the moving party has submitted sufficient other evidence showing notice and assent. *See Walsh*, 2014 WL 4168479, *3 (finding assent to Microsoft terms as proved by declarations describing the clickthrough process without screenshots); *accord Mendoza*, 2014 WL 4540225, *3; *Day*, 2014 WL 243159, *2.

Here, the preponderance of the evidence—indeed, all the evidence—confirms that (1) Microsoft provided Plaintiffs with reasonable notice of the MSA and an opportunity to review it before deciding whether to create their Microsoft accounts, (2) Plaintiffs objectively



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

manifested their assent to these terms in creating their accounts, binding them to the individual arbitration agreement, and (3) Plaintiffs also agreed to versions of the MSA post-account creation by continuing to use their accounts after Microsoft sent notice of the updated MSAs.

**1. Microsoft Provided Sufficiently Conspicuous Notice of the MSA.**

In determining sufficiency of notice, courts look to "whether a reasonably prudent user would have inquiry notice" of the agreement. *Oberstein*, 60 F.4th at 515. Sufficient conspicuousness exists where the terms are hyperlinked and "distinguished from the surrounding text in bright blue font," and are "displayed directly above or below the action button." *Id.*; *see also Keebaugh*, 100 F.4th at 1020–21 (notice beneath button presented terms in different font color). Microsoft's account-creation process meets this standard. The MSA is hyperlinked in blue font directly above the action button. And Fogarty testified that all prospective users would have been presented with the hyperlinked MSA directly next to the action button since at least October 2012—before any Plaintiffs created their accounts. Dkt. 56-2 ("Fogarty Decl.") ¶¶ 4–5; *see also* Mot. 10. Indeed, even Plaintiffs' submission showing a parallel sign-up process matches Fogarty's testimony, as it too shows a hyperlinked MSA in blue font directly above an action button with notice that proceeding "means that you agree to the" MSA. Dkt. 48 at 7.

There is no heightened evidentiary requirement for Microsoft to provide exact screenshots of what the notice looked like when Plaintiffs created their accounts (about a decade ago). "[S]creenshots were not required." *Needleman*, 474 F. Supp. 3d at 1100 n.1. Microsoft does not, in the ordinary course of business, keep all examples of historic screenshots of what the Microsoft account-creation process looked like at all times over the last 12 years. Microsoft provided unambiguous testimonial evidence that Plaintiffs would have been presented with a notice containing a hyperlinked MSA directly next to the action button substantially similar to the screenshots Microsoft did provide. Fogarty Decl. ¶¶ 3–5. Microsoft's testimonial and exemplar evidence suffices to establish that Plaintiffs had "reasonable notice of the" MSA. *Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *2 (W.D. Wash. 2019) (holding this provides reasonable notice).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Courts compel arbitration even without any screenshot evidence (i.e., less than what Microsoft provided) where, as here, the movant's "declaration is sufficiently detailed," and there is no "contradicting evidence about what the plaintiff saw." *Robbins v. Mscripts, LLC*, 2023 WL 5723220, *5 (N.D. Cal. 2023) (holding plaintiff assented to arbitration agreement despite lack of screenshots). "A contrary holding would mean that an obsolete platform is not subject to an arbitration clause merely because illustrative screenshots cannot be generated from a non-existent platform." *Id.* Courts repeatedly enforced the MSA and similar Microsoft arbitration agreements based on the same notice and click-through process where Microsoft submitted declarations describing the process without the exact screenshots individuals would have seen.

Notably, Plaintiffs do not argue that the terms were not presented conspicuously, only that they do not *recall* seeing them. Dkt. 50 ¶ 10; Dkt. 51 ¶ 10; Dkt. 52 ¶ 10. But whether Plaintiffs *actually* recall seeing them, or even whether they actually saw them, is irrelevant—the standard is objective, not subjective. *Oberstein*, 60 F.4th at 513. Even if that were otherwise (and it is not), Plaintiffs' assertions are nothing more than self-serving; they do not rebut Microsoft's objective *evidence* showing that to create their Microsoft accounts, they first had to acknowledge a button directly next to the hyperlinked MSA and notice stating that continuing with account-creation meant they were agreeing to the MSA. Fogarty Decl. ¶¶ 3–5.

Plaintiffs' authorities are inapposite. *Snow v. Eventbrite, Inc.*, does not apply because there the defendant did not show—through screenshots or testimony—what the plaintiff would have seen. 2020 WL 6135990, at *5, *7 (N.D. Cal. 2020); *see Robbins*, 2023 WL 5723220, at *5 (refusing to follow *Snow* because defendant's "declaration described what the plaintiff confronted"). Further, the *Snow* defendant's representations that the layout of the notice and hyperlinks was "'substantively identical' … later proved untrue." *In re Juul Labs, Inc. Antitrust Litig.*, 555 F. Supp. 3d 932, 948 (N.D. Cal. 2021) (finding sufficient evidence where Wayback Machine screenshots supported information in declarations). But here, Microsoft described the account-creation process Plaintiffs would have seen and provided exemplar screenshots, with testimony explaining the process has been materially the same as those examples.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

This case is also unlike *Sellers v. JustAnswer LLC*. There, the court found notice insufficient because customers agreeing to a one-off transaction on a website were unknowingly enrolled in a paid subscription, i.e., customers would "not expect to enter into an ongoing relationship" based on that type of transaction. 73 Cal. App. 5th 444, 471–72 (2021). In contrast, Plaintiffs here created Microsoft accounts—a free continuing service that allows Plaintiffs to access various online benefits—and they did so after Microsoft presented them with notice that creating these accounts meant they were agreeing to the MSA. This is routine, and reasonable consumers creating free accounts to access various services would understand that their continuing use of their accounts would be subject to online terms. *See, e.g.*, *Keebaugh*, 100 F.4th at 1018–21 (ongoing relationship—mobile game user with "continued access"—plus conspicuously distinguished notice that "By tapping 'Play' I agree to the Terms of Service" with hyperlinks was sufficient notice to compel arbitration); *Oberstein*, 60 F.4th at 516–17 (compelling arbitration where "Terms were marked in bright blue font" in notices "located directly on top of or below each action button" in transaction reflecting "contemplation of 'some sort of continuing relationship").

Given the Court's request for additional examples of account-creation screenshots, Microsoft found historical screenshots from the Internet Archive's Wayback Machine website[1] closest in time (March 30, 2015, December 5, 2013, and November 6, 2016, respectively) to the dates Plaintiffs Saeedy, Wilkinson, and Shah created their Microsoft accounts (April 13, 2015, December 26, 2013, and November 9, 2016, respectively). Burnside Decl. ¶¶ 2–4. Not surprisingly, these screenshots are consistent with the Fogarty declaration that Microsoft filed with its original motion, which explained what all these screenshots show: Plaintiffs were presented with a hyperlinked MSA next to language explaining that selecting the adjacent action button meant they were agreeing to the MSA, and that this was required to create their accounts.

---

[1] Courts in the Ninth Circuit treat webpages retrieved from the Wayback Machine like any other webpage whose authenticity is not subject to dispute. *See Yuksel v. Twitter, Inc.*, 2022 WL 16748612, *3 (N.D. Cal. 2022) ("[D]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine"; collecting cases and taking judicial notice of webpages from Wayback Machine) (citation omitted); *accord FTC v. LendingClub Corp.*, 2018 WL 11436309, *4 (N.D. Cal. 2018); *Heinz v. Amazon.com Inc.*, 2024 WL 2091108, *2 (W.D. Wash. 2024) (taking judicial notice of screenshots from Wayback Machine).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Fogarty Decl. ¶¶ 3–5; Burnside Decl. ¶¶ 2–4. The screenshots closest in time to when Wilkinson and Shah created their accounts in 2013 and 2015 show the same notice and acceptance button described in the Fogarty declaration. Burnside Decl. Ex. A, B. The version closest in time to when Shah created his account shows the first page of the account creation process. *Id.* Ex. C ("Before proceeding, we need to make sure a real person is creating this account."). But the Wayback Machine does not show the next webpage, where Shah would have been presented with the identity-verification requests and notice language, as described in Fogarty's declaration. *Id.* ¶ 4. Other publicly available sources (YouTube videos of users going through the account creation process) show the second identify-verification screen and the notice language as Fogarty described it. *Id.*

There is no material difference between the description provided in the Fogarty declaration and this additional evidence—confirming what Fogarty testified: that the process has remained materially the same. Indeed, this additional evidence simply underscores that—as numerous courts have found—Microsoft provided sufficient notice of and an opportunity to review the MSA before Plaintiffs proceeded with creating their accounts. *See also In re Juul*, 555 F. Supp. 3d at 948–49 (compelling arbitration; "plaintiffs have not identified Wayback Machine screen shots from the relative time periods showing anything materially different from the screen shots proffered by JLI on this motion"); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 & n.2 (9th Cir. 2020) (website "provided sufficient notice to a reasonably prudent internet user of its Terms of Use" notwithstanding different sign-in pages because the "relevant features are nearly identical"). Any argument that more is required of Microsoft to establish a valid arbitration agreement would place arbitration agreements on different footing from other contracts, which the FAA forbids. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

**2. Plaintiffs Unambiguously Manifested Their Assent.**

The second element of constructive notice is whether the user "takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein*, 60 F.4th at 515. Again, there is no dispute that Microsoft presented Plaintiffs



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

with a hyperlinked MSA along with a reasonably conspicuous notice that selecting the adjacent action button to proceed with account creation meant they were accepting the MSA. Plaintiffs could not have created their Microsoft accounts without first selecting that button. Fogarty Decl. ¶¶ 4–5. These facts establish objective manifestation of assent to the MSA. *Oberstein*, 60 F.4th at 516; *Keebaugh*, 100 F.4th at 1020–21; *Chen*, 2019 WL 3564659, at *3; *Thorne v. Square, Inc.*, 2022 WL 542383, *8 (E.D.N.Y. 2022) ("[plaintiff] could not avoid noticing the hyperlink when she registered for an account" and "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account"). Courts routinely enforce the MSA under similar circumstances. *See, e.g.*, *Day*, 2014 WL 243159, *1 ; *J.A. v. Microsoft Corp.*, 2021 WL 1723454, *4 (W.D. Wash. 2021); *Mendoza*, 2014 WL 4540225, *1; *Walsh*, 2014 WL 4168479, *1; *Romanov v. Microsoft Corp.*, 2021 WL 3486938, *4 (D.N.J. 2021); *Maher v. Microsoft Corp.*, 2018 WL 1535043, *1 (N.D. Ill. 2018).

Plaintiffs' expedient claims that they do not recall seeing the conspicuous notice with the hyperlinked MSA when assenting to account creation do not rebut Microsoft's evidence. *Cordas*, 228 F. Supp. 3d at 990; *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 942 (N.D. Cal. 2023) ("Plaintiffs' bare assertion that they do not recall this process does not overcome [defendant's] evidence."); *see also Powell v. United Rentals (N. Am.), Inc.*, 2019 WL 1489149, *3 (W.D. Wash. 2019) (although plaintiff "attests that he does not recall executing the Agreement, he does not dispute [defendant's] evidence showing that he was presented with a copy" that he signed). Again, their subjective recollection is neither evidence nor material, as the standard is objective.

Plaintiffs contend they did not assent to the MSA because they allege they pressed "enter" instead of clicking a button to proceed. Opp. at 21. But pressing "enter" is an objective action that is understood to reasonably prudent internet users to move them through the account-creation process just like a "click" would. The two actions are equivalent. Allowing users to avoid their agreements because they pressed "enter" instead of clicked a button on a mouse would lead to absurd results (and would raise accessibility concerns for those who lack the ability to use a mouse). Courts consistently uphold website designs allowing users to manifest



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

assent to terms by pressing "enter." *Oberstein*, 60 F.4th at 516 (collecting cases). Plaintiffs cite no case where the click-versus-enter issue mattered, and Microsoft is aware of none.

Further, Plaintiffs' declarations do not refute Microsoft's evidence—they are consistent with Microsoft's proof. Plaintiffs Saeedy, Shah, and Wilkinson all say the same thing: that they think the screenshot pictured in their attorney's declaration accurately portrays what they saw, that they pressed "enter" after inputting their desired password, and that they "do not believe that [they] clicked on any blue buttons." Dkt. 50 ¶ 10; Dkt. 51 ¶ 10; Dkt. 52 ¶ 10. Their attorney's declaration confirms the same MSA notice and corresponding action button were presented to Plaintiffs. Dkt. ¶ 48 at 4–7. Thus, Plaintiffs' declarations establish they objectively manifested assent to the MSA. Whether they actually saw and read the notice and terms is irrelevant; they cannot overcome Microsoft's evidence with speculation. *Cordas*, 228 F. Supp. 3d at 990.

**3. Plaintiffs Again Assented to the MSA After Creating Their Accounts.**

All Plaintiffs allege they created Microsoft accounts, Compl. ¶¶ 9, 13, 18, 23, and thus agreed to the MSA during the account-creation process. In addition, Plaintiffs objectively manifested assent to the MSA after creating their Microsoft accounts because they continued to use their accounts after Microsoft sent notices to their accounts of the updated MSA. *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, *12–13 (N.D. Cal. 2023) (plaintiff assented to arbitration in updated terms due to continued use of service after receiving emailed notice of updates); *Walters v. Chase Manhattan Bank*, 2008 WL 3200739, *3 (E.D. Wash. 2008) (same; notice in monthly statement); *Rendon v. T-Mobile USA, Inc.*, 2024 WL 4284661, *3 (C.D. Cal. 2024) (same; email update). Microsoft's practice of providing email notices to account holders is explained in the Fogarty Declaration and concurrently filed Walsh Declaration. This evidence suffices. *See* ER 406 ("[E]vidence of … organization's routine practice may be admitted to prove that on a particular occasion the … organization acted in accordance with" that practice); *Bennett v. T-Mobile USA, Inc.*, 2024 WL 229580, *11 (W.D. Wash. 2024) (considering evidence of organization's "routine practices and procedures"). And it shows the following:



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

***Saeedy*** (a) clicked on the interrupt notice to acknowledge the August 2022 MSA update; and (b) was emailed the 2023 MSA update email. Fogarty Decl. ¶¶ 8–9. Saeedy's Microsoft account remains open and he alleges he uses it. Compl. ¶¶ 7, 9.

***Wilkinson*** (a) clicked on the interrupt notice to acknowledge the August 2022 MSA update; and (b) was emailed the 2023 MSA update email. Fogarty Decl. ¶¶ 8–9. Wilkinson's Microsoft account remains open and she alleges he uses it. Compl. ¶¶ 15, 18.

***Shah*** accepted the September 2016 MSA to create his Microsoft account on November 9, 2016. Fogarty Decl. ¶ 8. Shah's Microsoft account remains open. *Id.* ¶ 8(c). He concedes he "was frequently logged into his Microsoft account while using the Edge browser" since at least June 2021. Compl. ¶¶ 11, 13. Thus, he was sent email notice of the updated MSA per Microsoft's routine business practices. Fogarty Decl. ¶ 7; Walsh Decl. ¶ 3, Exs. A–C (form of email notices sent to Shah from 2019–2021). At a minimum, he is bound by the 2019 terms because he used his Microsoft account after Microsoft sent him email notice of the 2019 version. Walsh Decl. ¶ 3 (Shah logged in November 2019); Compl. ¶¶ 11, 13..

**B. The Court Should Compel M.C. to Arbitrate.**

At the hearing, Plaintiffs' counsel for the first time argued that their allegation—unique to M.C.—that M.C. "is *almost always logged into his Microsoft account* while using the Edge browser" was an "error." Compl. ¶ 23; *cf. id.* ¶¶ 9, 13, 18 (compare Saeedy, Shah, and Wilkinson allegations that they were "frequently logged into" their accounts while browsing). But M.C. did not amend his Complaint, so he is "conclusively" bound by his judicial admission. *Am. Title*, 861 F.2d at 226 ("Factual assertions in pleadings ... unless amended, are considered judicial admissions conclusively binding on the party who made them."); *Atencio v. TuneCore, Inc.*, 843 F. App'x 42, 44 (9th Cir. 2021). Accordingly, the Court should compel M.C. to arbitrate.

M.C.'s father submitted a declaration stating that "M.C. has confirmed that he has never created a Microsoft account for the use of any of Microsoft's products or services, including Edge." Dkt. 49 ¶ 6. But M.C.'s father does *not* say that M.C. has never created a Microsoft



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

account for some other purpose or used someone else's.[2] *See id.* In any event, this declaration from a third party is inadmissible hearsay and the Court should not consider it. *See* Fed. R. Evid. 802; *Smith v. Johnson*, 118 Wn. App. 1029, 2003 WL 22054222, *3–4 (affirming exclusion of father's declaration containing out-of-court statements from child). Further, the Court should reject any attempt by M.C. to disaffirm, through his father's inadmissible declaration, because there is no evidence M.C. discontinued using Edge (or met any other disaffirmance requirements). Dkt. 49 ¶¶ 12–14; *see also* RCW 26.28.030; *G.G. v. Valve Corp.*, 2017 WL 1210220, *3 (W.D. Wash. 2017) ("the minor cannot continue to benefit from the contract after disaffirming the contract."), *vacated in part on other grounds*, 799 F. App'x 557 (9th Cir. 2020).

The Court should hold M.C. to his judicial admission that he had a Microsoft account, and should disregard the contradictory, hearsay statements in his father's declaration. *PTP OneClick, LLC v. Avalara, Inc.*, 2020 WL 4729174, *7 (W.D. Wash. 2020) (declining to allow plaintiff "to withdraw the judicial admissions in its complaint" and disregarding "contradictory statements in [its] recent declaration"); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (disregarding new allegations "directly contradicted by" judicial admissions); *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 106566 & n.6 (D. Ariz. 1997) (declining to give weight to plaintiff's alleged error in judicial admission as "a stratagem to avoid arbitration"); *Ohkubo v. Antara Biosciences, Inc.*, 364 F. App'x 340, 341 (9th Cir. 2010) (rejecting plaintiff's "later-submitted evidence" on contract translation in light of the translation he attached to his complaint).

DATED this 11th day of October, 2024.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Microsoft Corporation*

By: *Fred B. Burnside*
Fred B. Burnside, WSBA #32491

---

[2] Microsoft believes M.C.'s father has a Microsoft account and reserves all rights related to such account if evidence later reveals M.C. used his father's account to browse Edge. If M.C. used his father's Microsoft account, the MSA governs that account and M.C.'s use. *See* Fogarty Dec. Ex. A at 5, § 4(a)(iii). If the Court allows M.C. to disavow his prior allegation that he was "almost always logged into his Microsoft account," Microsoft respectfully requests the ability to take limited discovery from M.C. and his parents to explore this factual inconsistency and determine its right to compel arbitration based on M.C.'s browsing Edge while logged into another Microsoft account.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Stephen M. Rummage, WSBA #11168
Xiang Li, WSBA #52306
Caleah Whitten, WSBA #60209
steverummage@dwt.com
fredburnside@dwt.com
jaimedrozd@dwt.com
xiangli@dwt.com
caleahwhitten@dwt.com

James Moon, *pro hac vice*
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
jamesmoon@dwt.com



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax